Burnes, J.
Cypress Group Inc. (Cypress), Sarah Legendre (Legendre), Brian Caracciolo (Caracciolo) and Jason Rockel (Rockel) brought a declaratory action against Stride & Associates, Inc. (Stride) seeking a declaration that the noncompetition agreements that both Caracciolo and Rockel signed while at Stride are unenforceable. Stride counterclaimed seeking enforcement of the agreements. The parties are before this court on Stride’s motion for a preliminary injunction. For the reasons set forth below, Stride’s motion is DENIED.
BACKGROUND
I.Stride
Stride is a nationwide company that focuses on placing full-time information technology (IT) professionals. They have offices under four different names: Remington International, Boylston Group, Macarthur Associates, and Atlantis Partners. Stride locates qualified IT applicants and matches them with corporate customers desiring to hire such applicants. Employees start out at Stride as recruiters. They may then be promoted in turn to the position of placement manager, senior counselor, group manager, and finally office manager. Sales groups at Stride work in a “bull-pen” setting where both information regarding clients and commissions are shared. Stride’s business is garnered mainly from making large numbers of calls to potential customers. Stride salespeople are expected to make between 150 and 200 cold calls to companies each day. When Stride opens a new branch office it transfers experienced salespersons to that location. These individuals are not permitted to bring any client contact information with them to their new location and are instead expected to rely on their sales skills to bring in business.
Stride enters into restrictive covenants with its staff. The agreements relating to the case before this court stated that:
The Employee agrees that, for a period of twelve (12) months following the date of his/her termination . . . he/she will not solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the clients, customers, candidates, or accounts, or prospective clients, customers, candidates, or accounts of the Company which were served by and/or in contact with the Employee or the Employee’s office during the Employee’s tenure with the Company.
The agreements further stated that:
The Employee ... will not directly or indirectly own, manage, operate control or participate in the ownership, management, operation or control of, or be connected as an officer, partner, director, employee, contractor, consultant, subcontractor, or otherwise with, or have any financial interest in, or aid or assist anyone else in the conduct of any entity or business which competes directly with any business conducted by the Company . . . within a one hundred mile radius of any office within the Employee’s District, or within a one hundred mile radius of any office for which the Employee has acted as a District Manager... for a period of twelve (12) months following the date of his/her termination of employment. . .
II.Legendre and Cypress
Legendre worked for Stride from 1995 to 2002. During her employment with Stride, Legendre signed a noncompetition agreement. In June 2002, she left Stride and started her own placement firm, Cypress. Stride subsequently threatened litigation over Legendre’s noncompetition agreement. After a period of negotiation Stride and Legendre settled their dispute. The settlement agreement prohibited Cypress from soliciting a set list of Stride clients for a period of six months. The agreement expired on June 11,2003.
III.Caracciolo
Caracciolo, who had never worked in the staffing industry before, began working in Stride’s New York office in 1997 as a sales trainee. He signed his first noncompetition agreement four months later when he was promoted to placement counselor. In July 2000, Stride promoted Caracciolo to a practice manager position at the Boylston Group in Boston and required him to sign another noncompetition agreement. In October 2001, Stride promoted Caracciolo to the position of senior counselor but did not require him to sign a new noncompetition agreement. On January 29, 2003, Stride fired Caracciolo because of poor performance. In February 2003, Caracciolo began his employment at Cypress.
IV.Rockel
Rockel, who had never worked in the staffing industry before, began working for Stride in 1998 as a sales trainee in their New York Atlantis Partners office. He became a practice manager in Boston’s Remington International office in January 2000. At that time he signed a noncompetition agreement. He became an office sales manager in Atlanta’s Atlantis Partners office in July 2001, a practice manager in the Remington office in October 2001, a senior counselor in Boston’s Atlantis Partners office two weeks later, and finally a practice manager in Boston’s Atlantis Partners office in March 2003. None of these changes *438 in job position were accompanied by a new noncom-petition agreement. In July 2003 Rockel resigned from Stride and went to work for Cypress.
DISCUSSION
To obtain a preliminary injunction a party must show that it is likely to succeed on the merits and that without the relief requested it will be subject to a substantial risk of irreparable harm. The parly must also show that the risk of harm it will be subjected to outweighs any possible risk of harm to the opposing party. If the balance cuts in favor of the moving party, the preliminary injunction will be issued. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
I. Likelihood of Success on the Merits
A restrictive covenant between an employer and an employee may be enforced where the employer can show that the agreement is: (1) necessary to protect a legitimate business interest of the employer; (2) supported by consideration; (3) reasonably limited in all circumstances including time and space; and (4) otherwise consonant with public policy. All Stainless, Inc. v. Colby, 364 Mass. 773, 777-78 (1974).
A. Necessary to Protect a Legitimate Business Interest in Goodwill
A restrictive covenant may be used to protect a business’s legitimate interest in its goodwill. New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 674 (1977). A restrictive covenant that protects an employer from ordinary competition, however, does not serve a legitimate business interest. Marine Contractors Co. v. Hurley, 365 Mass. 280, 287-88 (1974); Richmond Bros., Inc. v. Westinghouse Broadcasting Co., 357 Mass. 106, 111 (1970). An employer’s goodwill consists of its “positive reputation in the eyes of its customers or potential customers . . . [and] is generated by repeat business with existing customers or by referrals to potential customers.” Marine Contractors Co., 365 Mass, at 287-89. In order for an individual to infringe on the former employer’s goodwill that individual must be “in a position ... to develop close relationships with a wide range of [the employer’s] customers or suppliers.” All Stainless, Inc., 364 Mass, at 777; Oxford Global Resources, Inc. v. Guerriero, Civ. Action No. 03-12078-DPW (D.Mass. 2003).
Stride asserts that without the enforcement of the restrictive covenants it has no way to prevent the defendants in counterclaim from infringing on its goodwill. The facts do not support Stride’s assertion. Stride’s business method does not rely on goodwill to increase placements. Instead, the company focuses on the volume of calls made. Recruiters, new and seasoned, are expected to make 150 to 200 cold calls per day. There is nothing in Stride’s papers that shows in any way that employees are expected to, or Stride supports them in, developing or maintaining continuing relationship with customers. As a result, recruiters at Stride do not develop strong relationships with their clients. And Stride does not value any relationships that may develop. For example, any time a Stride recruiter changes office locations, he or she is forbidden to bring along any client list and is expected to rely exclusively on sales skills in order to make placements. Accordingly, while at Stride, Caracciolo and Rockel did not have the opportunity to develop the types of relationships that would allow them to infringe on Stride’s goodwill. They were not in a position to take Stride’s goodwill with them to Cypress. There is, indeed, no evidence indicating that either Caracciolo or Rockel targeted Stride clients while at Cypress. Stride presents no evidence that Rockel ever solicited one of the customers he dealt with while at Stride. While at Cypress, Caracciolo only made one placement with a customer (Draeger Medical Systems) that he had worked with during his period of employment with Stride. Stride is unlikely to be able to show at trial that the agreements are necessary to protect its good will.
B. Consideration
In order for a restrictive covenant to be enforceable it must be supported by consideration. F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 587-88 (1968); AFC Cable Sys. v. Clisham, 62 F.Sup.2d 167, 173 (D.Mass. 1999). Any time arestrictive covenant is signed by an employee, the employer must provide some clear additional benefit. E.g., Marine Contractors Co., 365 Mass, at 285-86. Each time an employee’s employment relationship with the employer changes materially such that they have entered into a new employment relationship a new restrictive covenant must be signed. Id.
Both Caracciolo and Rockel entered into new employment relationships with Stride without signing restrictive covenants. Caracciolo joined Stride in New York in March 1997. Stride promoted him four months later and at that time he signed a restrictive covenant. He signed another non-compete in August 1998. Upon becoming a practice manager in the Boston Office of the Boylston Group in July 2000, Caracciolo signed another restrictive covenant. Caracciolo did not sign, however, a new restrictive covenant when he moved to the Remington office as a senior counselor in October 2001.
Rockel signed his first restrictive covenant upon joining the New York office of Atlantis Partners in October 1998. He signed a new restrictive covenant when he became a practice manager in Boston’s Remington International office. Rockel next became an office sales manager in Atlanta’s Atlantis Partners office in July 2001, then a practice manager in the Remington office in October 2001, then a senior counselor in Boston’s Atlantis Partners office. For none of these job changes was Rockel required to sign a new restrictive covenant. Finally, in March 2003 Rockel became a practice manager in the Boston Atlantis *439 Partners office. Again, Rockel signed no new restrictive covenant. Stride is unlikely to be able to prove at trial that there was consideration for the agreements that Rockel and Caracciolo signed while they were at Stride.
C. Reasonable in All Circumstances, Including Time and Space
A restrictive covenant will only be enforced if it is reasonable based on all of the circumstances. All Stainless, Inc., 364 Mass, at 778; Sherman v. Pfefferkorn, 241 Mass. 468, 474 (1922). In making this determination the reasonable needs of the former employer for protection from harmful conduct of the former employee must be weighed against the reasonableness of the restraint imposed on the former employee and the public interest. All Stainless, Inc., 364 Mass, at 778; Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 553 (1935). Any restraint must be consistent with the protection of goodwill. All Stainless, Inc., 364 Mass, at 778.
The restraint in the present case applied for a period of 12 months after employment ended. This time period appears reasonable. See Richmond Bros., 357 Mass, at 110-11. In order to be enforceable, the restrictive covenant must still be reasonable in all other respects. Here, the restrictive covenant restrained Caracciolo and Rockel from competing within a 100-mile radius of any office for which they acted as a district manager. This geographical restraint is completely arbitrary; Stride’s business is conducted predominately over the telephone. Furthermore, Stride is unlikely to be able to prove at trial that this geographical limit was designed to protect Stride’s goodwill because Stride’s business methodology does not rely on building relationships with clients within any given area.
D. Public Policy
A restrictive covenant is enforceable only to the extent that it is consistent with the public interest. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 501 (1986). It is against public policy to prevent individuals from earning a living. Sentry Ins. v. Firnstein, 14 Mass.App.Ct. 706, 707 (1982). Public policy also dictates that agreements that are voluntarily entered into and accepted should be enforced. Shipley Co., L.L.C. v. Kozlowski, 926 F.Sup. 28, 30 (D.Mass. 1996). In the present case, Cypress offers no reason why enforcement of the restrictive covenant would be against public policy and this court can likewise think of none.
II. Irreparable Harm
Stride has not demonstrated that it will suffer irreparable harm if the injunction it seeks is not issued. Stride’s business predominately relies on the volume of calls its recruiters make, not on any form of goodwill it builds with clients. Without Stride’s having any real possibility of proving that its goodwill could be infringed upon if the restrictive covenant is not enforced, the harm that Caracciolo and Rockel would suffer as a result enforcing the restrictive covenants far outweighs any minor harm that Stride might suffer. Enforcing the restrictive covenants would prevent Caracciolo and Rockel from using the skills and experience they have in the IT staffing industry, which in turn could prevent them from being employed at all.
ORDER
For the foregoing reasons, plaintiff-in-counterclaim’s motion for a preliminary injunction is DENIED.