Houston, J.
On July 30, 2004, the plaintiff Lycos, Inc. (“Lycos”) filed a Complaint and the instant Motion for Injunctive Relief against the defendants, Lincoln Jackson (“Jackson”) and Young Mi Chun (“Chun”), former employees of Lycos. The Complaint, in four counts, alleges breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual and business relations against Jackson alone, and misappropriation of trade secrets in violation of G.L.c. 93, §42 et seq. At the hearing on this motion, Jackson entered into an agreement with Lycos stipulating to a preliminaiy injunction. Only Chun, therefore, is subject to the instant Memorandum of Decision and Order. After careful consideration of counsels’ oral argument and memoranda, plaintiffs Motion for Injunctive Relief is DENIED.
*295 BACKGROUND
Lycos, a Virginia corporation with its principal place of business in Waltham, Massachusetts, provides online products and services, including online navigation, entertainment, email, search capability, and e-commerce, to consumers and businesses globally. In May 1998, Lycos hired Lincoln Jackson as its Search Director of Senior Product Management. Jackson was the “Search Visionary” for Lycos — the individual who decided howto develop and improve its search engine. As a senior executive, Jackson had access to trade secrets and confidential business information.[2] As part of his employment, Jackson was therefore required to sign a nondisclosure, noncompetition and developments agreement (the “Agreement”) whereby he was prohibited from working for a competitor or soliciting employees or certain customers or clients of Lycos for one year after his departure. He was further required to return all confidential materials to Lycos at the end of his employment and prohibited from using or disclosing any of Lycos’ confidential information as defined within the agreement.
Young Chun was lured by Lycos in March 2000.[3] On March 3, 2000, Chun also signed the Agreement. In pertinent part the Agreement stated as follows: “I shall not, either during or after my employment, disclose to anyone outside the Company, or use other than for the purpose of the business of the company, any Confidential Information[4] of the Company or any information received in confidence by any third party ... If I leave the employ of the Company for any reason whatsoever, I shall return to the Company all property of the company or of any third party, including all Confidential Information ... I agree that during my employment with the Company and thereafter, I will not. . . seek or accept employment (or a consultancy relationship) with any direct competitor of the Company. I agree this restrictive period shall last until (1) year after the termination of my employment . . . provided, however, that such period shall be extended for a period of time equal to the period of time in which I am in violation of any provision of this section . . . This Agreement shall be governed by the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws provisions.”
Chun was initially hired as a Project Manager at an annual salary of $55,000. She was also eligible for bonus compensation up to 10% of her base salary. She reported directly to Jackson and did not have any direct reports beneath her. Her responsibilities included “driving the ‘roadmap’ for tactical plans/projects and ensuring that they proceeded smoothly through product development, quality assurance and live service release.”[5] On July 1, 2001, Chun was promoted and her job title changed to Product Manager. Chun received a new annual salary of $65,782 with a bonus of up to 10% of her base pay. In the new position Chun managed three employees. Her responsibilities included “running the day-to-day operations relating to the Lycos search engine and . . . Lycos ‘directories.’ ”
On January 1,2002, Chun received a salary adjustment upward of approximately $5,000, but her potential bonus was reduced to 5% of her base salary. At this time she also ceased to supervise other employees. Chun interpreted this change in circumstances as a demotion. In March 2004, Chun was promoted to Senior Product Manager and her base salary was increased to $81,900 with bonus eligibility for up to 5% of her base salary. Chun reported directly to Jackson and then to Tim Wilde, Vice President General Manager Search Services, after Jackson left Lycos. Her responsibilities included “running the day-to-day operations relating to Lycos Search, Sidesearch and the day-to-day operations for the ‘directories.’ ” She also began working on new product initiatives, writing MRDs, conducting focus group tests, and writing marketing pitches.
Prior to this final promotion, Lycos had not asked Chun to sign either an offer letter or a new nondisclosure, noncompetition and developments agreement. When Chun was promoted to Senior Product Manager, however, Maria Haddad, Lycos’ Senior Director of Human Resources, provided her with an Offer Letter to sign and return. The Offer Letter informed Chun about her promotion and referenced the Agreement she had signed previously. Chun did not sign and return the Offer Letter.
Jackson resigned from Lycos in May 2004 and refused to disclose his future employment plans. Jackson’s last date of employment was June 11,2004. Shortly thereafter Lycos learned that Jackson was employed by a direct competitor, Ask Jeeves, Inc. (“Ask Jeeves”).[6] In July 2004 Chun resigned as well. Chun returned all of her files to Lycos, with the exception of the “Usability Lab” key which is in the possession of her counsel, but refused to disclose her future plans of employment. Following their departure, Lycos sent Ask Jeeves a written demand that requested assurances that it did not employ either Jackson or Chun. Lycos demanded the same assurances from Jackson. Neither Ask Jeeves nor Jackson responded to Lycos’ requests.
DISCUSSION
A party seeking a preliminaiy injunction must show a likelihood of success on the merits and, that absent injunctive relief it will be subject to a substantial risk of irreparable harm. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). Additionally, the moving party must demonstrate that the risk of harm to which it will be subjected without the preliminaiy injunction outweighs any possible risk of harm to the opposing party while subject to the injunction. Id. A court may grant the relief requested if the balance of parties’ interests cuts in favor of the moving party. Id.
*296 I. Likelihood of Success on the Merits A. Contract Claims
A restrictive covenant between an employer and an employee may be enforced where the employer can show that the agreement is: (1) necessary to protect a legitimate business interest of the employer; (2) supported by consideration; (3) reasonably limited in all circumstances including time and space; and (4) otherwise consonant with public policy. All Stainless, Inc, v. Colby, 364 Mass. 773, 777-78 (1974). In the instant case, Lycos cannot demonstrate that the agreement was supported by consideration.
In order for a restrictive covenant to be enforceable it must be supported by consideration. F.A. Bartlett Tree Expert Co. v. Barington, 353 Mass. 585, 587-88 (1968); AFC Cable Sys. v. Clisham, 62 F.Sup.2d 167, 173 (D.Mass. 1999). Any time a restrictive covenant is signed by an employee, the employer must provide some clear additional benefit. E.g., Marine Contractors Co. v. Hurley, 365 Mass. 280, 285-86 (1974). Each time an employee’s employment relationship with the employer changes materially such that they have entered into a new employment relationship a new restrictive covenant must be signed. Marine Contractors Co., 365 Mass. at 285-86; F.A. Bartlett Tree Expert Co., 353 Mass. at 587-88; AFC Cable Sys., 62 F.Sup.2d at 173.
Chun’s employment relationship with Lycos varied over time with respect to her salary, her bonus eligibility, her responsibilities, her direct reports, and her title. It is clear, however, that Chun’s employment relationship had changed materially by the time she was promoted to Senior Product Manager, if not before. As discussed above, Chun gained a new title, an increase in salary, and new responsibilities. Significantly, prior to her final promotion, Lycos provided Chun with an Offer Letter describing the offer and making reference to the Agreement. Lycos requested that Chun sign the Offer Letter demonstrating her acceptance of the Agreement, thus implicitly acknowledging a material change in their relationship such that a new employment contract and nondisclosure, noncompetition and developments agreement was necessary. See F.A. Bartlett Tree, 353 Mass. at 587; AFC Cable Systems, 62 F.Sup.2d at 170.
Because a material change in the employment relationship between Chun and Lycos voided the previous Agreement, and because Chun did not sign the Offer Letter incorporating the old Agreement, no written nondisclosure, noncompetition and developments agreement now exists between the parties. Plaintiffs Motion for Injunctive Relief for enforcement of the Agreement is therefore denied.
B. Misappropriation of Trade Secrets (G.L.c. 93, §42 et seq.)
In order to succeed on a claim of misappropriation of trade secrets, a plaintiff must prove that the information sought to be protected is a trade secret, that it took reasonable steps to preserve the secrecy of the information, and that the defendant used improper means to acquire and use the trade secret. Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass.App.Ct. 937, 939 (1984); DB Riley, Inc. v. AB Engineering Corp., 977 F.Sup. 84, 89-90 (D.Mass. 1997). Lycos, however, cannot demonstrate a likelihood of success on the merits. There is no evidence in the record that Chun has used improper means to acquire and use any of Lycos’ trade secrets. Following her resignation, Chun returned all of her files to Lycos, with the exception of the “Usability Lab” key which is in the possession of her counsel. Her simple refusal to share her future employment plans with Lycos, even if that future employer is a competitor, is simply insufficient information upon which to base a preliminary injunction. Plaintiffs Motion for Injunctive Relief is therefore denied.
ORDER
For the above reasons, the plaintiffs Motion for Injunctive Relief is DENIED.

Because Jackson has consented to the preliminary injunction by agreement with Lycos, the details of Jackson’s access to sensitive information is omitted.

Throughout her employment at Lycos, Chun had access to confidential information, including Lycos’ planned and contemplated changes to its current and new products. Lycos states that this information included “. . . [detailed financial information regarding Lycos; . . . [b]usiness plans, product strategy, engineering strategy, and marketing strategy for Lycos’ search products; [tlerms of contracts between Lycos and its business partners; [t]erms and conditions of employment between Lycos and its employees and consultants; and ... [i]nformation on future product releases and the strategic direction of Lycos’ search products.”

 the agreement defines confidential information as including, without limitation, “marketing data, financial information, confidential customer lists, sources of supply, technologies, products, know-how, product specifications, trade secrets, current and future product marketing plans, product characteristics and specifications, agreements with customers and pricing of products.”

Lycos does not categorize Chun’s duties according to which job title she held, but instead states that Chun’s duties included all of the following: “conducting surveys, focus groups and usability studies to understand the search market landscape; overseeing and developing marketing requirements documents and product specifications for new search products and features; creating requests for proposals for technology partnerships and related services; evaluates responses and leads vendor selection; contributing to the definition of the product road map; leading weekly road map meetings with cross-functional team and partner teams to roll out new products and service integrations throughout the product lifecycle; working closely with the program management team to implement and track strategic partner integrations and revenue; monitoring daily product line activity to observe trends and make data division decision; reporting and reconciling monthly and quarterly activity to Lycos Finance for revenue recognition to partners; contributing to the annual business strategy and budget forecasts for the product line including top and bottom line product revenue projections, marketing spend and other costs; building business cases for new product introductions and business develop *297 ment relationships: providing support for product introductions and business development relationships: providing support for product marketing efforts (including preparing product documentation, reviewing marketing collateral, identifying marketing outlets, and monitoring the ROI on the marketing investment); and managing two Product Mangers.”

Ask Jeeves’ website describes its business as follows: “Ask Jeeves Inc. is a leading provider of world-class information retrieval technologies, brands and services that are available to consumers across a range of platforms including destination websites, downloadable search-based applications and portals.”