Lauriat, Peter M., J.
In this action, the plaintiff seeks to enforce restrictive covenants with its former employees. The plaintiff has now moved for a preliminary injunction. After hearing and review, and upon the limited record before the court, the plaintiffs motion is denied.
BACKGROUND
“By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The record before the court, consisting of the Verified Complaint, affidavits from both parties and exhibits thereto, as well as reasonable inferences drawn from that evidence, provide the following background.
Plaintiff Grace Hunt IT Solutions, LLC (“Grace Hunt” or “plaintiff’) (formerly SvcSoft, LLC) provides software management consulting services with a focus on Microsoft products. Pursuant to an Asset Purchase Agreement (the “Purchase Agreement”) effective September 30, 2011, Grace Hunt became the successor and assignee of Grace Hunt, LLC (the “purchase transaction”).[1] Defendants John S. Joyce (“Joyce”), George Olsen (“Olsen”) and Robert A. Remick (“Remick”) (collectively, the “individual defendants”) were, at the time of the purchase transaction, employees of Grace Hunt, LLC; they then became employees of Grace Hunt.
Both Joyce and Olsen had signed Employment Agreements (the “Grace Hunt, LLC Employment Agreements”) with Grace Hunt, LLC, which included the following provision:
During the term of Employee’s employment with the Company and for a period of one year after Employee’s employment terminates, employee shall not perform any services, either as a consultant, employee, owner, investor or otherwise, with or for any Person who competes or is planning to compete with any current, planned or reasonably foreseeable business, product or service of the Company. During the term of Employee’s employment with the Company, and for a period of twelve months after Employee’s employment terminates, neither Employee nor any business controlled by, controlling, or under common ownership with Employee shall solicit or hire any employee of the Company without the prior written consent of the Company. A former employee of the Company shall be considered an employee for purposes of the preceding sentence for nine months after such employee’s employment with the Company has ceased.
Remick never signed an employment agreement with Grace Hunt, LLC.
After the purchase transaction, the plaintiff sent the individual defendants offer letters outlining the terms of their employment with Grace Hunt, each of which included a provision stating: “You shall be required to sign the Company’s Non-Competition and Confidentialiiy Agreement as a condition of your employment, which is enclosed” (the “Non-Compete Agreement”). During an employment meeting, Kenneth Rapoport (“Rapoport”), the manager of Grace Hunt, announced that Grace Hunt was planning to implement a different compensation structure and vacation accrual, impose a six-month probation period, require new 1-9 information and employee checks, and change eligibility for fringe benefits. The individual defendants signed and returned their offer letters on or around October 3, 2011.[2] They refused to sign the Non-Compete Agreements that accompanied those letters.[3], [4]
In the end of October, SIS Software, LLC (“SIS”), a software consulting company based in Georgia, con *461 tacted Joyce about opening a Boston office. Although at the time Joyce was not interested in leaving Grace Hunt, knowing that Olsen and Remick were unhappy at the company, he forwarded them SIS’s contact information. Subsequently, SIS made the individual defendants employment offers and, in early December, they all resigned from Grace Hunt, effective December 23, 2011.
None of the three informed Grace Hunt that they were planning to work for SIS, although in a December 8, 2011, conversation between Olsen and the President and CEO of SBS Group, Jim Bowman, Bowman informed Olsen that he knew Olsen was going to SIS. Bowman tried unsuccessfully to convince Olsen to remain at Grace Hunt, and threatened to sue Olsen if Olsen tried to take any Grace Hunt customers with him.
According to the individual defendants, they each contacted certain clients to let them know that they were leaving Grace Hunt. They assert, however, that they did not inform any client that they were leaving to go to SIS, nor did they encourage any client to leave Grace Hunt. After they started working at SIS on January 3, 2012, Joyce and Remick sent email announcements, with their new contact details, to people on their respective client lists. Five or six of Joyce’s clients have contacted him; three or four of Remick’s clients have done the same. Olsen has given his contact information to one former client and another former client has contacted Olsen.
On December 30, 2011, Public Consulting Group (“PCG”), a client of Grace Hunt, received an email announcement from SIS, dated December 22, 2011, stating that Olsen had joined SIS as Senior Network Engineer, and Joyce and Remick had joined as Senior Applications Consultants. PCG forwarded the email to Rapoport. The plaintiff filed this action on January 6, 2012, alleging in sum that, while still employed by Grace Hunt and shortly thereafter, the individual defendants communicated with and solicited its clients on behalf of SIS. As a result, according to affidavits submitted by Rapoport, since the individual defendants left Grace Hunt, Landmark Health Solutions and Schweizer Dipple, Inc., two clients of Grace Hunt, have switched their Microsoft affiliation to SIS. Another client, A.D. Makepeace, has demanded refunds of about $20,000 in prepays made to Grace Hunt. The Verified Complaint asserts claims for injunctive relief (Count I); breach of contract and breach of fiduciary duiy against the individual defendants (Counts II and III); and tortious interference with advantageous /prospective business relations and violation of G.L.c. 93A against SIS (Counts IV and V).
Grace Hunt has now moved for a preliminary injunction (1) prohibiting Joyce and Olsen from competing with Grace Hunt, soliciting its customers or employees, and disclosing confidential information; (2) prohibiting Remick from soliciting customers or employees and disclosing confidential information; and (3) prohibiting SIS from interfering with the contractual relationship between Grace Hunt and the individual defendants. The defendants respond that the Non-Compete Agreements are unenforceable, therefore Grace Hunt cannot demonstrate a likelihood of success on the merits of its claim and, in any event, it cannot show irreparable harm.
DISCUSSION
Under the well established balancing test set forth in Packaging Indus. Group, Inc., 380 Mass. at 617, a preliminary injunction is warranted only when the moving party establishes both a likelihood of success on the merits of its claim(s), and a substantial risk of irreparable harm in the absence of an injunction. Once these elements are established, the court must balance the threatened harm to the moving party against the harm that an injunction will inflict on the opposing party. Id. In balancing those considerations, “(wjhat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Id. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. “(T]he significant remedy of a preliminary injunction should not be granted unless the plaintiffl ] ha[s] made a clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004). See also Landry v. Attorney General, 429 Mass. 336, 343 (1999) (remedy of a preliminary injunction “should not be grant(ed) unless [the plaintiffs] by a clear showing, carrie[d their] burden of persuasion”).
“Employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer.” Marine Contractors v. Hurley, 365 Mass. 280, 287 (1974). Legitimate business interests might include trade secrets, confidential information, or the good will the employer has acquired through dealings with his customers. Id. See also All Stainless, Inc. v. Colby, 364 Mass. 773, 779-80 (1974). Here, the employer interest invoked is customer good will. An employer’s customer good will is a legitimate business interest that may properly be protected by restrictive covenants. Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 641 (2004).
The Verified Complaint alleges that the individual defendants misappropriated Grace Hunt’s good will by the following conduct: (1) Joyce, while still employed at Grace Hunt, solicited an outside consultant, Brian Kuehl, to join SIS, and made disparaging remarks about Grace Hunt, causing Kuehl not to interview there; (2) Joyce and Remick contacted former Grace Hunt employees to “work actively against the best interests of Grace Hunt”; (3) the individual defendants communicated with clients and former employees of Grace Hunt; (4) Joyce, while still employed at Grace *462 Hunt, contacted and solicited Emptoris, a strategy supply and management solutions company, on behalf of SIS; and (5) Joyce solicited PCG after leaving Grace Hunt.
The defendants first contend that the Grace Hunt, LLC Employment Agreements did not survive the purchase transaction.[5] They rely on Getman v. USI Holdings Corp., 19 Mass. L. Rptr. 679 at *2 (Mass.Super.) (Gants, J.), for the proposition that a non-compete provision of a broader employment agreement is not enforceable after the original contracting employer is acquired by a new company. Their reliance is inappo-site. In Getman, the plaintiff originally contracted not to compete with his employer, a small insurance brokerage firm. Id. at *1. A “much larger” company subsequently bought the firm. Id. The court concluded that the plaintiff “did not agree not to compete with a much larger insurance brokerage firm such as USI” since the scope of the non-compete was materially changed. Here, however, there is no evidence that Grace Hunt was a materially different entity than Grace Hunt, LLC.
That does not end the matter, however. Under Massachusetts law, the Grace Hunt, LLC Agreements would be void if there were material changes in the employment relationship between the individual defendants and Grace Hunt. Iron Mountain Information Mgmnt., Inc. v. Taddeo, 455 F.Sup.2d 124, 132 (E.D.N.Y. 2006) (applying Massachusetts law). “(F]ar reaching changes [in an employment relationship] strongly suggest that the parties had abandoned their old arrangement and had entered into a new relationship.” FA. Bartlett Tree Experts v. Barrington, 353 Mass. 585, 587-88 (1968). “It is well-settled under Massachusetts law that each time an employee’s employment relationship with the employer changes materially such that they have entered into a new employment relationship a new restrictive covenant must be signed.” Iron Mountain, 455 F.Sup.2d at 132-33. Relying on FA. Bartlett, several Superior Court decisions have reached the same conclusion. See Lycos, Inc. v. Jackson, 18 Mass. L. Rptr. 256, 2004 Mass.Super. LEXIS 348, at *9 (Mass.Super.Ct. August 25, 2004) (Houston, J.); Cypress Group, Inc. v. Stride & Assocs., Inc., 17 Mass. L. Rptr. 436, 2004 WL 616302 (Mass.Super.Ct. February 11, 2004) (Bumes, J.); Intertek Testing Servs. N.A., Inc. v. Curtis Strauss, LLC, 2000 WL 1473126 at *6 (Mass.Super.Ct. August 8, 2000) (Gants, J.). See also ABC Cable Sys., Inc. v. Clisham, 62 F.Sup.2d 167, 173 (D.Mass. 1999) (applying Massachusetts law). “Massachusetts courts have consistently refused to grant in-junctive relief or otherwise enforce restrictive covenants where such covenants were entered prior to changes in the employment relationship.” Iron Mountain, 455 F.Sup.2d at 133, citing Lycos, Inc., 2004 Mass.Super. LEXIS 348, at *10.
In making a determination as to whether there was a material change in an employment relationship, “courts have considered it extremely significant that the employer sought to have the employee sign a new non-compete agreement.” Iron Mountain, 455 F.Sup.2d at 133. See also Lycos, 2004 Mass.Super. LEXIS 348 at *10 (“[Plaintiff] requested that [defendant] sign the Offer Letter demonstrating her acceptance of the Agreement, thus implicitly acknowledging a material change in their relationship such that a new employment contract and non-disclosure, non-competition and developments agreement are necessary”); Cypress Group, Inc., 2004 WL 616302 (motion for preliminary injunction seeking enforcement of restrictive covenant denied because employees did not sign new restrictive covenant after their promotions to new positions at company).
As an initial matter, the court agrees with Remick that, because he never signed any employment or non-compete agreement with Grace Hunt, LLC, he cannot be bound by the terms of the Grace Hunt, LLC Employment Agreement. With respect to Joyce and Olsen, while certain of the changes in the terms and conditions of their employment were hardly far reaching,[6] the change in their compensation plan was more significant. According to their affidavits, their base salary was cut by 20%; they were to make up the difference by bonuses based on billable hours. Olsen stated in his deposition that there was not enough work available for him to reach the billable hours necessary to realize a bonus. Furthermore, as a condition of their employment, the individual defendants were required to sign a new non-compete agreement, which they refused to do. See Iron Mountain, 455 F.Sup.2d at 129. See also Astro-Med v. Nihon Kohden of America, 591 F.3d 1, 16 (1st Cir. 2009) (applying Massachusetts law and citing Intertek Testing Serv’s., 2000 WL 1473126 at *6).
That Remick and Olsen’s salaries were guaranteed until April 2012, is of no moment.[7] There is sufficient evidence, at this stage, to suggest that under the new compensation plan, Joyce and Olsen would have made significantly less, at least until there was sufficient work to enable them to bill enough hours to be eligible for bonuses. That their fringe benefits were better, as the plaintiff suggests, is also immaterial. Under FA. Bartlett and its progeny, it is the existence of a material change in the relationship that voids the prior non-compete agreement, not the nature of that change. As the court in Iron Mountain stated, this court “is aware of no case under Massachusetts law where, despite a material change in employment terms coupled with an employee’s refusal to sign a new covenant at employer’s request, a court has nevertheless upheld a restrictive covenant executed prior to the change in employment terms.” 455 F.Sup.2d at 134. The plaintiff has thus failed to meet its burden of establishing a likelihood of success on the merits of its claims. Given this conclusion, the court need not address whether Grace Hunt would suffer immediate, irreparable harm should an injunction not issue.
*463 Finally, the plaintiff asserts that SIS tortiously interfered with its contractual relationship with Joyce, Remick, and Olsen and violated G.L.c. 93A. The tort of intentional interference with contractual relations “protects a plaintiffs present and future economic interests from wrongful interference.” Blackstone v. Cashman, 448 Mass. 255, 259 (2007). To make out a successful claim, Grace Hunt must prove that (1) it had a contractual relationship with the individual defendants; (2) SIS knowingly induced a breaking of the relationship; (3) SIS’s interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) Grace Hunt was harmed by SIS’s actions. Id. at 260. The plaintiff does not elaborate on its argument in this regard however, and the court can find no evidence in the record before it that any interference on the part of SIS, even if intentional, was improper in motive or means. Thus, at this stage, the plaintiff has not established a likelihood of success on the merits of its claims against SIS.
ORDER
For the reasons recited, Plaintiff Grace Hunt IT Solutions, LLC’s Motion for Preliminary Injunction is , DENIED.

It appears from evidence in the record that, simultaneously with or almost immediately after the purchase transaction, SBS Group New England acquired Grace Hunt IT. That acquisition does not appear to be germane to this motion.

Remick and Olsen amended their letters so that their salaiy would not change until April 1, 2012. Remick inserted language to the effect that any changes to his base compensation or bonuses would be as a result of negotiations with the company.

Joyce drafted a new non-compete provision that would have prevented him from competing only if he left the company voluntarily, and included a list of thirteen customers that he could perform work for or solicit even if he left the company voluntarily. Although he emailed the amended provision to the plaintiff, he never heard back. Remick marked up and initialed the Non-Compete Agreement and sent it to the plaintiff; he received no response. Olsen never submitted the Non-Compete Agreement; no one from the company followed up.

The Non-Compete Agreement initially included provis- . ions prohibiting employees from (1) engaging in any business activity that was in competition with Grace Hunt, (2) soliciting or doing business with any customer or prospective customer of Grace Hunt, and (3) soliciting or recruiting any employee of Grace Hunt. Rapoport subsequently deleted the non-compete portion of the provision.

Both the Grace Hunt, LLC Employment Agreements and the Asset Purchase Agreement specifically provide for the assignment of the contracts. The Grace Hunt, LLC Employment Agreement provides that “the Company may assign its rights and obligations under this agreement without consent of Employee in the event that the Company shall... transfer all or substantially all of its properties or assets to any other Person.” The Asset Purchase Agreement defines “Acquired Assets” as, inter alia, “all confidential information, non-competition, and/or invention assignment contracts between Seller and its employees . . .”

For example, the office moved five miles from Hudson to Marlborough. Grace Hunt waived other proposed changes, such as the probationary period and the wait period.

Joyce elected to make no changes to his employment offer, and accepted the compensation structure.