Curran, Dennis J., J.
Intepros, Inc. sued Mr. Paul Athy and Ms. Anne Marie Canty for violating non-competition agreements signed in 1997 and 1998, respectively. The agreements, inter alia, prohibited Mr. Athy *145 and Ms. Canty from competing with Intepros, Inc.’s business of staffing and career servicing for one year and within a radius of 50 miles. Intepros now seeks to restrain and enjoin Mr. Athy and Ms. Canty because it alleges that in the fall of 2012, Mr. Athy started Power4 Career Services, LLC, and hired Ms. Canty, in order to compete with Intepros in violation of their agreement.
After reviewing the parties’ submissions and after a hearing, the plaintiffs motion for a preliminary injunction is DENIED for the following reasons.
BACKGROUND
Based upon the record before the Court at this early stage, the Court makes the following preliminaiy findings for the purpose of deciding this motion only.
Intepros, Inc. is a staffing and career servicing company of IT professionals. It hired Mr. Paul Athy, a defendant, around June 30, 1997; he signed an employment agreement about three years later on July 21, 1997; through the years, Intepros promoted Mr. Athy from branch manager, to regional vice president, and finally in March 2005, to its Chief Operating Officer. In this final position, Mr. Athy became “ultimately responsible for operations and profit/loss[es]” of the company. Verified Complaint ¶6. He left the company on August 17, 2012 after he submitted his two weeks’ notice and resignation as Chief Operating Officer. Mr. Athy said he was leaving Intepros to coach his son’s football team and after the season, would possibly create a company to assist recent college graduates in finding jobs.
Ms. Anne Marie Canty, a defendant, originally joined Intepros as a full-time recruiter on September 14, 1998. She signed her first employment agreement that same day. Intepros later fired Ms. Canty in 2002. But then five years later, Ms. Canty was rehired as a part-time employee and signed a new employment agreement on October 1,2007. Intepros fired her again in December of2008, but then hired her anew in April of 2010 as a part-time Director of Training. She did not sign a new employment agreement. She resigned from this last position on September 28, 2012 and left Intepros for the last time.
The employment agreements signed by both Mr. Athy and Ms. Canty (1997 and 2007, respectively) contained a non-competition covenant. [1] Under paragraph 8, both parties agreed not to compete with Intepros “for a period of twelve (12) months after termination of [e]mployee’s employment with the Company.” Plaintiffs Exhibits A and B. The covenant was enforceable “within a radius of fifty (50) miles from any office of the [c]ompany in which [e]mployee has worked, or over which [e]mployee has exercised any form of supervisory authority, during the one-year period preceding termination.” Plaintiffs Exhibits A and B. Under the agreement, a former employee could not solicit Intepros customers, hire current or former Intepros employees, or work for a recruiting firm or employment agency within the proscribed period and radius.
Beginning in December of 2012, Mr. Athy’s company, Power4 Career Services, LLC, contracted Staples, Inc., Power4s sole client, to recruit permanent employees for Staples’ e-commerce business. That same month, Ms. Canty joined Power4 as Director of Career Counseling, to assist with the Staples account.
The record discloses that Intepros became aware Mr. Athy and Ms. Canty were working as recruiters after it discovered on-line advertisements posted by them soliciting job candidates. Contrary to Mr. Athy’s representation that he would be coaching and working with recent college graduates, Power4 had many advertisements searching for experienced IT professionals for various positions. Ms. Canty’s name appeared on each advertisement. Upon further investigation, Intepros learned that Staples was a client of Power4, a company that Intepros was soliciting when Mr. Athy was Chief Operating Officer. Mr. Athy denies this assertion.
Intepros now seeks to enforce that portion of the contract Mr. Athy signed sixteen years ago when first hired as a branch manager, and Ms. Canty’s agreement some fifteen years ago before her unsyncopated relationship with Intepros began.
DISCUSSION
I. Introduction
“By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). As such, the Court has considered: (1) Intepros’s verified complaint; (2) its motion for temporary restraining order and preliminary injunction; (3) Intepros’s agreement with Mr. Athy; (4) Intepros’s agreement with Ms. Canty; (5) affidavit of John Kovalcik; (6) defendant’s opposition to plaintiffs motion; (7) defendant’s memorandum of law; (8) affidavit of Paul F. Athy, Jr.; (9) his second affidavit; and (10) the affidavit of Anne Marie Canly.
II. The Standard for Preliminary Injunctive Relief
For over three decades, the standard for preliminary injunctive relief has been set forth in Packaging Indus. Group, Inc., 380 Mass, at 616-22. An applicant for preliminary injunctive relief must demonstrate the moving party’s likelihood of success on the merits and a substantial risk of irreparable harm in the absence of preliminary injunctive assistance. Id. The moving party must also show that when balancing the harms, the moving party’s harm outweighs any possible risk of harm to the non-moving party. Id. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance be *146 tween these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. Additionally, “the significant remedy of a preliminary injunction should not be granted unless the plaintiff! 1 ha[s] made a clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004); see also Landry v. Attorney General 429 Mass. 336, 343 (1999) (a preliminary injunction “should not be grant[ed] unless [the plaintiffs] by a clear showing, carried their burden of persuasion”).
III.Likelihood of Success on the Merits
A non-competition agreement is generally enforceable if it: (1) protects an employer’s legitimate business interest; (2) is supported by consideration; (3) is reasonable in time and space; and (4) is consonant with the public interest. All Stainless, Inc. v. Colby, 364 Mass. 773, 111-IS (1974); Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961). Under the facts presented here, Intepros cannot prove that the employment agreements signed by Mr. Athy and Ms. Canty were supported by further consideration upon their promotions.
IV.Consideration
An employer must demonstrate that a non-compete agreement is supported by consideration to be enforceable. See F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 587-88 (1968); see also AFC Cable Sys. v. Clisham, 63F.Sup.2d 167, 173 (D.Mass. 1999). When an employee signs a non-competition agreement, the employer must provide some clear additional benefit. E.g., Marine Contractors Co. v. Hurley, 365 Mass. 285, 286 (1974). However, each time an employee’s employment relationship with the employer changes materially such that they have entered into a new relationship, a new non-competition agree-mentmustbe signed. F.A. Bartlett Tree Expert Co., 353 Mass, at 587-88; see also Iron Mountain Information Mgmt., Inc. v. Taddeo, 455 F.Sup.2d 124, 132 (E.D.N.Y. 2006) (applying Massachusetts law). “[F]ar reaching changes [in an employment relationship] strongly suggest that the parties had abandoned their old arrangement and had entered into a new relationship.” F.A. Bartlett Tree Expert Co., 353 Mass at 587-88; see also AFC Cable Sys., 63 F.Sup.2d at 173 (A material change in an employer-employee relationship includes title change, a change in pay structure, an increase in authority, and work focus).
Relying on F.A. Bartlett, several Superior Court decisions have reached the same conclusion. See Grace Hunt IT Solutions, LLC v. SIS Software, LLC, 2012 WL 1088825 at *4 (Mass.Super. Feb. 14, 2012) [29 Mass. L. Rptr. 460]; Lycos, Inc. v. Jackson, 18 Mass. L. Rptr. 256 (Mass.Super. 2004); Cypress Group, Inc. v. Stride & Assocs., Inc., 17 Mass. L. Rptr. 436 (Mass.Super. 2004); Intertek Testing Servs. N.A., Inc. v. Curtis Strauss, LLC, 2000 WL 1473126 at *6 (Mass.Super. August 8, 2000); see also AFC Cable Sys., Inc., 62 F.Sup.2d at 173 (applying Massachusetts law). These cases support the point that “Massachusetts courts have consistently refused to grant injunctive relief or otherwise enforce restrictive covenants where such covenants were entered prior to changes in the employment relationship.” Iron Mountain, 455 F.Sup.2d at 133, citing Lycos, Inc., 18 Mass. L. Rptr. at 256.
V.The Non-Compete Ms. Canty Signed in 2007 is Unenforceable
This chart summarizes Ms. Canty’s on-again, off-again employment relationship with Intepros:
Started Job Non-Competition Ended Job Agreement Signed
September 14, 1998 Late 2001/ Early 2002 Yes[2]
October 1, 2007 December 2008 Yes[3]
April 2010 September 28, 2012 No[4]
As shown in this chart, the last time Ms. Canty signed a non-compete agreement for Intepros was on October 1, 2007. See Verified Complaint ¶13; see also Canty Affidavit ¶6-7. That agreement prohibited Ms. Canty from competing with Intepros “for a period of 12 months after termination of the [e]mployee’s employment with the [e]mployer.” Plaintiffs Exhibit B. In-tepros terminated Ms. Canty for the second time in December 2008. See Verified Complaint ¶13; see also Canty Affidavit ¶6-7. She was unemployed until In-tepros rehired her in April 2010—without signing a new non-competition agreement See Verified Complaint ¶15; see also Canty Affidavit ¶8. Two years and six months (or 30 months) passed between December 2008 and April 2010. Consequently, under the terms of the October 1, 2007 employment agreement, containing the non-competition agreement at issue, Ms. Canty fulfilled her contractual obligations and the restrictive period elapsed, thus rendering the restrictive covenant unenforceable.
Moreover, even if the restrictive period did not elapse, the agreement is still unenforceable because Intepros materially changed the employer-employee relationship when Intepros fired Ms. Canty in December 2008. See Canty Affidavit ¶7. In F.A. Bartlett Tree, an employee’s compensation and sales area were changed so materially that the court voided a twelve-year-old non-competition agreement. 353 Mass, at 585-88. Here, Ms. Canty was fired. See Canty Affidavit ¶¶3-8. Ms. Canty no longer worked for Intepros, she no longer received a salary, and she lacked any authority within the company. See generally id. She was unemployed from December 2008 until her return in April 2010. See Canty Affidavit ¶¶3-8. Thus, for In-tepros to have an enforceable non-competition restriction against Ms. Canty, she needed to sign a new non-competition agreement upon her return to In-tepros in April 2010—just as Intepros had required on two previous occasions. See Canty Affidavit ¶¶3, 6. For these reasons, it is unlikely Intepros will be able to prove at trial that the agreement dated October 1, 2007 is enforceable against her.
*147 VI. The Non-Compete Mr. Athy signed in 1997 is Unenforceable
The facts here are markedly different from the application of the usual non-competition agreement.
Intepros cannot enforce the non-compete agreement Mr. Athy signed in 1997. In Cypress Group, Inc., an IT placement company sought to enj oin two former employees that left to join another former employee’s competing business. 17 Mass. L. Rptr. 436, 436 (The preliminary injunction was sought as a countersuit to the plaintiffs declaratory judgment action seeking to void the non-competition agreement). Both employees signed non-competition agreements when they joined the company. Id. However, the company neither required nor asked either employee to sign a new non-compete agreement upon their promotion from manager to senior counselor. Id. Consequently, the court held, inter alia, that the company was “unlikely to be able to prove at trial that there was consideration for the agreements” and denied the motion for preliminary injunction. Id.
Similarly, in F.A. Bartlett, the court voided a non-compete because a new agreement was not signed when the defendant was promoted from salesman to district sales manager. 353 Mass. at 587-88. In both F.A. Bartlett and Cypress Group, Inc., the courts reasoned that further consideration was required because the employment relationship underwent a material change and thus necessitated a new agreement. Id.; 17 Mass. L. Rptr. 436, 436.
Here, Mr. Athy signed a non-compete agreement on July 21, 1997 shortly after joining Intepros. See Verified Complaint ¶7. Both Mr. Athy and Intepros operated under this agreement until he left the company on August 17,2012. Id. at 19. Over these 15years, Intepros never asked Mr. Athy to sign an updated or new agreement upon any of Mr. Athy’s promotions—from branch manager, to regional vice president, to Chief Operating Officer. See Verified Complaint at ¶¶6-9. Mr. Athy’s employment relationship changed dramatically over the years—from his start as branch manager, to his promotion a decade and a half later to Chief Operating Officer, who was “ultimately responsible for operations and profit/loss[es]” of the company. Id. at ¶6.
As Chief Operating Officer, Mr. Athy’s title changed, certainly his pay increased, and by Intepros’s own admission, his authority increased substantially. See id. Therefore, this case is governed by F.A. Bartlett and Cypress Group, Inc. Just as in Bartlett, the record shows here that Mr. Athy’s employment relationship with Intepros materially changed over his many promotions. 353 Mass. at 587-88; 17 Mass. L. Rptr. 436, 436. As a result, the non-competition agreement executed in 1997 between Mr. Athy and Intepros must be declared void and unenforceable.
Intepros has thus failed to meet its burden of establishing a likelihood of success on the merits of its claim.
ORDER
For these reasons, the plaintiff Intepros, Inc.’s motion for a preliminary injunction is DENIED.

intepros revised its employment agreement in August of 2002, but the non-competition covenant remained materially unchanged.

See Verified Compl. ¶12; see also Canty Aff. ¶3-4.

See Verified Compl. ¶13; see also Canty Aff. ¶6-7.

See Verified Compl. ¶15; see also Canty Aff ¶8.