## Henrietta Eaton vs. Federal National Mortgage Association & another.[1]

Suffolk. October 3, 2011. - June 22, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Mortgage,* Foreclosure, Assignment, Real estate. *Real Property,* Mortgage, Record title, Sale. *Negotiable Instruments,* Assignment, Note. *Notice,* Foreclosure of mortgage. *Practice, Civil,* Preliminary injunction, Summary process. *Summary Process. Statute,* Retroactive application. *Words,* "Mortgagee."

Discussion of the standard of review of a grant of a preliminary injunction. [574-575]

This court concluded that the term "mortgagee" in G. L. c. 244, § 14, means a mortgagee who also holds the underlying mortgage note [575-585], but that a foreclosing mortgagee under the statutory power of sale is not required to have physical possession of the mortgage note in order to effect a valid foreclosure, given that there is no applicable statutory language suggesting that the Legislature intended to proscribe application of agency principles in the context of mortgage foreclosure sales, and therefore, this court concluded that G. L. c. 244, §§ 11-17C, and G. L. c. 183, § 21, permit one who, although not the note holder himself, acts as the authorized agent of the note holder to "stand in the shoes" of the "mortgagee" as the term is used in those provisions [586]; further, in the exceptional circumstances presented, this court exercised its discretion to hold that this interpretation of the term "mortgagee" in G. L. c. 244, § 14, and related statutory provisions applies prospectively, i.e., only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this decision [586-589], but this court nevertheless applied its ruling to the instant appeal, given that the plaintiff had argued to this court the issue of the interpretation of the term "mortgagee" [589].

This court vacated an order, issued in a civil action challenging the validity of a foreclosure by power of sale undertaken by a mortgage holder that did not hold the underlying mortgage note, that preliminarily enjoined the assignee of the mortgage holder from proceeding with a summary process action to evict the plaintiff from her home, where the plaintiff's allegation on information and belief that the mortgage holder was not authorized by the note holder to carry out the foreclosure sale did not offer an adequate factual basis to support the preliminary injunction that was issued. [589-590]

Civil action commenced in the Superior Court Department on April 8, 2011.

[1]Green Tree Servicing, LLC.

A motion for a preliminary injunction was heard by *Frances A. McIntyre*, J.

A petition for interlocutory review pursuant to G. L. c. 231, § 118, first par., was considered in the Appeals Court by *Judd J. Carhart*, J., and a decision denying the petition was reported by him to a panel of that court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard E. Briansky* (*Joseph P. Calandrelli* with him) for the defendants.

*Samuel Levine* (*David A. Grossman & H. Esme Caramello* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Adam J. Levitin*, pro se.

*Max Weinstein, Stuart Rossman, & Paul Collier* for Wilmer-Hale Legal Services Center & others.

*Marie McDonnell*, pro se.

*Diane C. Tillotson, Robert J. Moriarty, Jr., & Thomas O. Moriarty* for Real Estate Bar Association & another.

*John L. O'Brien, Jr.*, pro se.

*Steven A. Ablitt & James L. Rogal* for Ablitt Scofield, P.C.

*Mark B. Johnson & Michael A. Klass* for American Land Title Association.

*Richard A. Oetheimer* for Mortgage Bankers Association.

*Suchand Reddy Pingli*, pro se.

*Katherine McDonough*, pro se.

*Robert P. Marley*, pro se.

*Howard N. Cayne & David D. Fauvre*, of the District of Columbia, & *Asim Varma & Douglas M. Humphrey* for Federal Housing Finance Agency.

*Robert Napolitano*, pro se.

BOTSFORD, J. In this case, we address the propriety of a foreclosure by power of sale undertaken by a mortgage holder that did not hold the underlying mortgage note. A judge in the Superior Court preliminarily enjoined the defendant Federal National Mortgage Association (Fannie Mae) from proceeding with a summary process action to evict the plaintiff, Henrietta Eaton, from her home, following a foreclosure sale of the property

by the defendant Green Tree Servicing, LLC (Green Tree), as mortgagee. The judge ruled that Eaton likely would succeed on the merits of her claim that for a valid foreclosure sale to occur, both the mortgage and the underlying note must be held by the foreclosing party; and that because Green Tree stipulated that it held only Eaton's mortgage, the foreclosure sale was void, and the defendants therefore were not entitled to evict Eaton. Pursuant to G. L. c. 231, § 118, first par., the defendants petitioned a single justice of the Appeals Court for relief from the preliminary injunction. The single justice denied the petition and reported his decision to a panel of that court. We transferred the case to this court on our own motion.

For the reasons we discuss herein, we conclude as follows. A foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular G. L. c. 183, § 21, and G. L. c. 244, § 14. These statutes authorize a "mortgagee" to foreclose by sale pursuant to a power of sale in the mortgage, and require the "mortgagee" to provide notice and take other steps in connection with the sale. The meaning of the term "mortgagee" as used in the statutes is not free from ambiguity, but we now construe the term to refer to the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder.[2] Further, we exercise our discretion to treat the construction announced in this decision as a new interpretation of the relevant statute, only to apply to foreclosures under the power of sale where statutory notice is provided after the date of this decision. We vacate the preliminary injunction and remand the case to the Superior Court for further proceedings consistent with this opinion.[3]

---

[2] The term "mortgage note" is used in this opinion to refer to the promissory note or other form of debt or obligation for which the mortgage provides security; and the term "note holder" is used to refer to a person or entity owning the "mortgage note."

[3] We acknowledge the amicus briefs filed by Adam J. Levitin, pro se; Wilmer-Hale Legal Services Center, National Consumer Law Center, and Paul Collier; Marie McDonnell; Real Estate Bar Association for Massachusetts, Inc., and Abstract Club (collectively REBA); John L. O'Brien, Jr., pro se; Ablitt Scofield, P.C.; American Land Title Association; Mortgage Bankers Association; Suchand Reddy Pingli, pro se; Katherine McDonough, pro se; Robert P. Marley, pro se; Federal Housing Finance Agency; and Robert Napolitano, pro se.

1. *Background.*[4] On September 12, 2007, Eaton refinanced the mortgage on her home in the Roslindale section of Boston (Roslindale property) by executing a promissory note payable to BankUnited, FSB (BankUnited, or lender), for $145,000. That same day, she also executed a mortgage, referred to in the mortgage itself as a "[s]ecurity [i]nstrument." The mortgage is separate from, but by its terms clearly connected to, the promissory note. The parties to the mortgage are Eaton as the "[b]orrower," BankUnited as the "[l]ender," and Mortgage Electronic Registration Systems, Inc. (MERS),[5] as the "mortgagee."[6]

Under the mortgage executed by Eaton, MERS as mortgagee (or its assignee) holds legal title to the Roslindale property with power of sale "solely as nominee" of the lender BankUnited (or its assignee). However, "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose

---

[4]The background facts are drawn from the allegations in Henrietta Eaton's verified complaint filed in the Superior Court, the motion judge's memorandum of decision and order on Eaton's motion for a preliminary injunction, and relevant documents from the record.

[5]Mortgage Electronic Registration Systems, Inc. (MERS), is a Delaware nonstock corporation owned by its members. See Arnold, Yes, There is Life on MERS, 11 Prob. & Prop. 32, 33 (1997) (Arnold). MERS is mortgagee of record for mortgage loans registered on the MERS electronic registration system, which tracks servicing rights and beneficial ownership interests in those loans; the system allows these servicing rights and beneficial ownership interests to be traded electronically between members without the need to record publicly each mortgage assignment. See *id.* In particular, when the beneficial interest in a loan is sold, the note is transferred by indorsement and delivery between the parties, and the new ownership interest is reflected in the MERS system. MERS remains the mortgagee of record so long as the note is sold to another MERS member; no aspect of such a transaction is publicly recorded. See *In re Agard*, 444 B.R. 231, 248 (Bankr. E.D.N.Y. 2011); *MERS, Inc.* v. *Romaine*, 8 N.Y.3d 90, 96 (2006). If an ownership interest in, or servicing right to, a mortgage loan is transferred by a MERS member to a non-MERS member, an assignment of the mortgage from the MERS member to the non-MERS member is publicly recorded and the loan is "deactivated" within the MERS system. See *id.* at 96 n.4. For additional discussion of MERS, see note 27, *infra.*

[6]Section C of the mortgage agreement's definitions section states that "MERS is a separate corporation that is acting *solely as a nominee* for Lender [BankUnited] and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument" (emphasis added).

and sell the Property; and to take any action required of Lender . . . ."[7]

The mortgage also contains a series of covenants that run exclusively between BankUnited as lender and Eaton. The final covenant, entitled "Acceleration; Remedies," empowers the lender, on default by Eaton, to "invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law." In this regard, the covenant obligates the lender, in invoking the statutory power of sale, to mail a copy of a notice of sale to Eaton.

On April 22, 2009, MERS assigned its interest as mortgagee to Green Tree and recorded the assignment in the Suffolk County registry of deeds. The record contains no evidence of a corresponding transfer of the note. The note was indorsed in blank by BankUnited on an undetermined date.[8]

Later in 2009, after Eaton failed to make payments on the note, Green Tree, as assignee of MERS, moved to foreclose on her home through exercise of a power of sale contained in the mortgage. A foreclosure auction was conducted in November, 2009; Green Tree was the highest bidder. The identity of the note holder at the time of the foreclosure sale is not known from the record. On November 24, 2009, Green Tree assigned the rights to its bid to Fannie Mae, and a foreclosure deed was recorded in the Suffolk County registry of deeds.

On January 25, 2010, Fannie Mae commenced a summary process action in the Boston division of the Housing Court Department to evict Eaton. Eaton filed a counterclaim, arguing

---

[7]In particular, the mortgage provides: "Borrower [Eaton] does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the [Roslindale property] . . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Interest."

[8]The defendants state in their brief that after indorsement, the note was transferred to the Federal National Mortgage Association (Fannie Mae). However, there is no record evidence of a transfer of the note to Fannie Mae.

that the underlying foreclosure sale was invalid because Green Tree did not hold Eaton's mortgage note at the time of the foreclosure sale and therefore lacked the requisite authority to foreclose on her equity of redemption in the Roslindale property. A Housing Court judge subsequently granted a sixty-day stay of the summary process action to give Eaton an opportunity to seek relief in the Superior Court.[9] The Housing Court judge also ordered Eaton to make use and occupancy payments during the pendency of her action. On April 8, 2011, Eaton filed a complaint in the Superior Court for injunctive and declaratory relief. The complaint sought a declaration that the foreclosure sale of Eaton's home and the subsequent foreclosure deed were null and void, and that Eaton was the owner in fee simple of the Roslindale property; a preliminary injunction to stay the summary process action in the Housing Court; and a permanent injunction barring Fannie Mae from taking steps to obtain possession of or convey the Roslindale property. For the purposes of Eaton's motion for a preliminary injunction only, the defendants stipulated that Green Tree did not hold Eaton's mortgage note at the time of the foreclosure. After hearing, the Superior Court judge (motion judge) allowed the motion and preliminarily enjoined Fannie Mae from proceeding with Eaton's eviction.

2. *Standard of review.* We review the grant or denial of a preliminary injunction for abuse of discretion. *Commonwealth v. Fremont Inv. & Loan,* 452 Mass. 733, 741 (2008). The conclusions of law of the judge below are "subject to broad review and will be reversed if incorrect." *Packaging Indus. Group, Inc. v. Cheney,* 380 Mass. 609, 616 (1980), quoting *Buchanan v. United States Postal Serv.,* 508 F.2d 259, 267 n.24 (5th Cir. 1975). In considering a request for a preliminary injunction the judge evaluates the moving party's chance of success on the merits and its claim of injury. *Packaging Indus. Group, Inc. v. Cheney, supra* at 617. Because the defendants do not dispute the likelihood of irreparable harm to Eaton if Fannie Mae proceeds to seek her eviction through the summary process

___

[9]This decision preceded *Bank of N.Y. v. Bailey,* 460 Mass. 327, 333-334 (2011), in which we held that the Housing Court had concurrent jurisdiction to entertain a counterclaim alleging an invalid foreclosure sale in a summary process action for eviction.

action, we confine our discussion to evaluating Eaton's likelihood of prevailing on the merits of her claim.

3. *Discussion.* As indicated, the motion judge determined that a foreclosure by sale requires the foreclosing mortgagee, at the time of the sale, to hold both the mortgage and the underlying mortgage note; and that if the mortgagee does not hold the note, the foreclosure sale is void. Based on this view, she concluded that because Green Tree, the assignee of the mortgage, had stipulated that it did not hold the mortgage note executed by Eaton when the sale took place, Eaton was likely to succeed in proving that the foreclosure sale was void and that the defendants had no authority to evict her and take possession of her home. See *Bank of N.Y.* v. *Bailey*, 460 Mass. 327, 333 (2011) (challenging evicting party's entitlement to possession "has long been considered a valid defense to a summary process action for eviction where the property was purchased at a foreclosure sale"). The defendants argue that in reaching this conclusion, the judge misread the Massachusetts common law, and that, in any event, the statutory scheme applicable to exercise of a power of sale gave Green Tree absolute authority, as "mortgagee," to foreclose. They also claim that Green Tree, as the assignee, had a contractual right to foreclose pursuant to the express terms of the mortgage. We begin with a brief overview of the common law of mortgages and then address the statutes governing exercise of a power of sale in a mortgage. Finally, we review the preliminary injunction in light of the relevant principles discussed and the terms of Eaton's mortgage.

a. *Common law.* A real estate mortgage in Massachusetts has two distinct but related aspects: it is a transfer of legal title to the mortgage property, and it serves as security for an underlying note or other obligation — that is, the transfer of title is made in order to secure a debt, and the title itself is defeasible when the debt is paid. See *U.S. Bank Nat'l Ass'n* v. *Ibanez*, 458 Mass. 637, 649 (2011) (*Ibanez*) (Massachusetts is a "title theory" State in which "a mortgage is a transfer of legal title in a property to secure a debt"); *Perry* v. *Miller*, 330 Mass. 261, 263 (1953), and cases cited (legal title held by mortgagee is "defeasible upon the payment of money or the performance of some other condition"); *Goodwin* v. *Richardson*, 11 Mass. 469,

475 (1814) (mortgage deed "purports to convey to the mortgagee a present estate in fee simple, defeasible on the performance of a certain condition by the mortgagor"). See also *Negron* v. *Gordon*, 373 Mass. 199, 204 (1977) ("[T]he mortgagee holds bare legal title to the property subject to defeasance on the mortgagor's performance of the obligation secured by the mortgage. It is only for the purpose of securing the debt that the mortgagee is to be considered owner of the property" [citations omitted]); *Young* v. *Miller*, 6 Gray 152, 153 (1856) ("The true character of a mortgage is the pledge of real estate to secure the payment of money, or the performance of some other obliga-tion"); *Maglione* v. *BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 90 (1990) ("So it is that the mortgagor retains an equity of redemption, and upon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee's interest in the real property comes to an end" [citations omitted]).

Following from these principles, a mortgage separated from the underlying debt that it is intended to secure is "a mere technical interest." *Wolcott* v. *Winchester*, 15 Gray 461, 465 (1860). See *Morris* v. *Bacon*, 123 Mass. 58, 59 (1877) ("That the debt is the principal and the mortgage an incident, is a rule too familiar to require citations in support of it"). However, in contrast to some jurisdictions, in Massachusetts the mere transfer of a mortgage note does not carry with it the mortgage. See *Barnes* v. *Boardman*, 149 Mass. 106, 114 (1889). See also 1 F. Hilliard, Mortgages 221 (2d ed. 1856) ("The prevailing doctrine upon this subject undoubtedly is, that an assignment of the debt carries the mortgage with it. This rule, however, is by no means universal, and is subject to various qualifications in the different States of the Union"). As a consequence, in Massachusetts a mortgage and the underlying note can be split. See *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 245 (1940) ("The holder of the mortgage and the holder of the note may be different persons").

Under our common law, where a mortgage and note are separated, "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accom-plished by filing an action in court and obtaining an equitable

order of assignment." *Ibanez*, 458 Mass. at 652, citing *Barnes* v. *Boardman*, 149 Mass. at 114. See *Wolcott* v. *Winchester*, 15 Gray at 465 ("The party holding such legal estate [i.e., mortgagee holding only mortgage without underlying note] no doubt holds the same in trust for the party owning the debt, where the entire debt secured by a mortgage has been parted with"); *Young* v. *Miller*, 6 Gray at 154 (where indorsee of note is without assignment of mortgage securing the note, "the law may well imply the intention of the parties that the mortgage is thenceforth to be held by the mortgagee in trust for the indorsee. In other words, such a transaction might manifest a resulting trust"); *Sanger* v. *Bancroft*, 12 Gray 365, 367 (1859) ("A mortgage cannot be made available without connecting it with the debt or duty secured thereby. To one who has not the debt, it is of no value as property, as it could at most be only resorted to as a trust for the benefit of the holder of the note"). See generally 1 F. Hilliard, Mortgages at 216 n.(c) ("The assignment of a mortgage, without the debt, creates at most a *naked trust*" [emphasis in original]); *id.* at 217 ("[The mortgage] has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond").[10]

Consistent with the principles just described — that is, the basic nature of a mortgage as security for an underlying mortgage

[10]Citing *In re Marron*, 455 B.R. 1, 6-7 (Bankr. D. Mass. 2011), the defendants suggest that because a mortgage and note can be separated, with the mortgage held in trust for the note holder, a mortgagee with "bare legal title" should be able independently to foreclose on the mortgage property as the trustee of the note holder, and thereafter account to the note holder for the sale proceeds. The argument, however, fails to take into account the nature of the trust at issue. This trust is an equitable device that may qualify as a resulting trust, see *Young* v. *Miller*, 6 Gray 152, 154 (1856); it is not an express trust that vests specific, independent authority in the trustee to foreclose on the trust property or to take other affirmative acts. A resulting trust "is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." Restatement (Third) of Trusts § 7 (2003). The duties of a trustee of a resulting trust are limited — he or she "is under a duty to merely transfer the trust property or the reversionary portion thereof to the reversionary beneficiary or in accordance with that beneficiary's directions. Until the property is so transferred, the title holder remains trustee with a duty to preserve the affected property and its product and to perform any other duties appropriate to the resulting-trust relationship." *Id.* at § 7 comment e.

note, and the role of a "bare" mortgagee as equitable trustee for the note holder — it appears that, at common law, a mortgagee possessing only the mortgage was without authority to foreclose on his own behalf the mortgagor's equity of redemption or otherwise disturb the possessory interest of the mortgagor. See *Howe* v. *Wilder*, 11 Gray 267, 269-270 (1858) (former assignee of mortgage note and mortgage who had retransferred note and canceled unrecorded mortgage assignment might still hold technical legal title to mortgage property as mortgagee but has no equitable right to disturb mortgagor's possessory interest and cannot bring action to foreclose mortgagor's equity of redemption because no money is due from mortgagor to him; only mortgagee with interest in underlying debt can so enforce mortgage). See also *Wolcott* v. *Winchester*, 15 Gray at 465 ("As a purchaser [of a mortgage without the underlying note], [defendant] must have known that the possession of the debt was essential to an effective mortgage, and that without it he could not maintain an action to foreclose the mortgage").[11] Cf. *Weinberg* v. *Brother*, 263 Mass. 61, 62 (1928).[12]

---

[11]In her memorandum of decision granting the preliminary injunction, the motion judge relied on *Wolcott* v. *Winchester*, 15 Gray 461 (1860), as well as *Crowley* v. *Adams*, 226 Mass. 582, 585 (1917), a case in where the court reiterated that "possession of the note was essential to an enforceable mortgage, without which [the] mortgage could [not] be effectively foreclosed." The defendants, as do a number of amici, argue that these cases merely provide support for the proposition that a mortgagee has no authority to foreclose if the underlying mortgage debt has been paid. This proposition clearly is true, but we do not agree that it is the basis of the court's decision in either *Howe* v. *Wilder*, 11 Gray 267, 269-270 (1858), or *Wolcott* v. *Winchester, supra* (although it does appear to be the basis in *Crowley* v. *Adams, supra*). More to the point, the general principle quoted and described in the text in connection with these cases, namely, that a mortgage ultimately depends on the underlying debt for its enforceability, is a separate proposition, and one stated by the court in all three decisions. See *Culhane* v. *Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 365 (D. Mass. 2011) ("while both *Wolcott* and *Crowley* state that a mortgage cannot be foreclosed where the underlying debt has been discharged, this is but one application . . . of the broader rule that a mortgagee must have a valid claim to the debt before attempting foreclosure").

[12]In *Weinberg* v. *Brother*, 263 Mass. 61 (1928), the court held that the plaintiff creditor could not reach and apply, in payment of the defendant's debt, a mortgage purportedly remaining with the defendant as mortgagee, because the mortgage was security for the underlying note, and the defendant previously had assigned the note to its true owner. The court stated:

"The mortgage is merely security for the note. As the note had been

b. *Statutory provisions.* The defendants take issue with the applicability of decisions such as *Wolcott* v. *Winchester*, 15 Gray at 465, *Crowley* v. *Adams*, 226 Mass. 582, 585 (1917), and *Howe* v. *Wilder*, 11 Gray at 269-270, to this case. They argue that in any event, G. L. c. 244, § 14, expressly authorized MERS (and its assignee) to foreclose because the mortgage in this case contained a power of sale. Accordingly, we turn to this statute, as well as related statutory provisions that together govern mortgage foreclosures under a power of sale.

It has long been recognized that statutes are a key source of authority generally governing mortgages. See *Fay* v. *Cheney*, 14 Pick. 399, 400-401 (1833) ("The law of mortgage in this [C]ommonwealth, is a mixed system, derived partly from the common law in regard to real property, partly from the rules and maxims of the English [C]ourts of [C]hancery, but principally from various statutes"). Statutes play an especially significant role in connection with mortgage foreclosures effected under a power of sale. See *Ibanez*, 458 Mass. at 646, quoting *Moore* v. *Dick*, 187 Mass. 207, 211 (1905) ("one who sells under a power [of sale] must follow strictly [statutory] terms").

The "statutory power of sale" is set out in G. L. c. 183, § 21.[13] Under this statute, if a mortgage provides for a power of sale, the mortgagee, in exercising the power, may foreclose

---

transferred to the real owner, the defendant would hold the mortgage in trust for the owner, even if there had been no assignment of it. . . . The bill to reach and apply is in the nature of an equitable trustee process. . . . The plaintiff [creditor], by making the equitable attachment, is in no better position than that of the assignee of a mortgage after the mortgagee has transferred title to the debt or note which the mortgage was given to secure. . . . Unless the note secured by the mortgage can be reached, the mortgage cannot be made available to the attaching creditor of the mortgagee." (Citations omitted.)

*Id.* at 62. Accord *O'Gasapian* v. *Danielson*, 284 Mass. 27, 30-31 (1933).

[13]General Laws c. 183, § 21, provides:

"The following 'power' shall be known as the 'Statutory Power of Sale', and may be incorporated in any mortgage by reference:

"(POWER.)

"But upon any default in the performance or observance of the forego-ing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion

without obtaining prior judicial authorization[14] "upon any default in the performance or observance" of the mortgage, *id.*, including, of course, nonpayment of the underlying mortgage note.[15,16] Section 21 provides, however, that for a foreclosure sale pursuant to the power to be valid, the mortgagee must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." See

> thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity."

The language of this section is discussed further in note 23, *infra.*

[14]Although foreclosure under the power of sale does not require judicial authorization, a foreclosing mortgagee is required to initiate a "limited judicial procedure[, St. 1943, c. 57, as amended through St. 1998, c. 142,] aimed at certifying that the mortgagor is not a beneficiary of the Servicemembers [Civil Relief] Act [50 U.S.C. Appendix §§ 501 et seq. (2006 & Supp. II 2008)]." *U.S. Bank Nat'l Ass'n* v. *Ibanez*, 458 Mass. 637, 646 (2011) (*Ibanez*). See *Beaton* v. *Land Court*, 367 Mass. 385, 390 (1975) (judicial action under St. 1943, c. 57, is not itself mortgage foreclosure proceeding and occurs independently of such proceedings).

[15]The power of sale "evolved in order to meet the increase of business transactions requiring loans and the desire to have a more speedy process of foreclosing than was furnished by suit or entry." A.L. Partridge, Deeds, Mortgages and Easements 201 (rev. ed. 1932). See 1 F. Hilliard, Mortgages 119 (1856) ("In consequence of the delays incident to the usual equity of redemption, a power of sale has now become a very frequent provision in deeds of mortgage. . . . [However, the power] will be jealously watched, and declared void for the slightest unfairness or excess . . .").

[16]The title of the act creating the statutory power of sale indicates that the power was given statutory form to shorten the length of mortgage instruments. See St. 1912, c. 502, § 6 ("An Act to shorten the forms of deeds, mortgages and other instruments relating to real property"). See also *Commonwealth* v. *Savage*, 31 Mass. App. Ct. 714, 716 n.4 (1991) ("The title of an act is part of it and is relevant as a guide to legislative intent"). Mortgages containing a power of sale existed at least as early as one hundred years before enactment of the statutory power. See generally *Poignand* v. *Smith*, 8 Pick. 272, 273 (1829) (discussing mortgage containing power of sale recorded in 1810).

*Moore* v. *Dick*, 187 Mass. 207, 211-213 (1905) (where notice of foreclosure sale was given in newspaper other than one named in mortgage agreement's power of sale, foreclosure was void, and plaintiffs were entitled to redeem mortgaged property approximately twenty years after sale; laches is no defense to void sale). See also *Tamburello* v. *Monahan*, 321 Mass. 445, 446-447 (1947) (where foreclosure sale conducted in bank office nine-tenths of one mile from mortgaged premises, sale was not "on or near the premises" as required by G. L. c. 183, § 21; sale held void).

In addition to G. L. c. 183, § 21, itself, the "statutes relating to the foreclosure of mortgages by the exercise of a power of sale," *id.*, are set out in G. L. c. 244, §§ 11-17C. See *Ibanez*, 458 Mass. at 645-646. Principal among these is c. 244, § 14 (§ 14), which provides in relevant part:

> "*The mortgagee* or person having his estate in the land mortgaged, or a person authorized by the power of sale, . . . *may, upon breach of condition and without action, do all the acts authorized or required by the power*; but no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, [the notice provisions set forth in this section are followed[17] ]" (emphasis added).

The defendants argue that by its plain, unambiguous terms, this section authorized Green Tree, as the assignee of MERS, to foreclose because Eaton's mortgage identified MERS, its successors and assigns as the "mortgagee" with the "power of sale." We disagree that § 14 is unambiguous. The section is one in a set of provisions governing mortgage foreclosures by sale, and that set in turn is one component of a chapter of the General Laws devoted generally to the topic of foreclosure and redemption of mortgages. The term "mortgagee" appears in several of these statutes, and its use reflects a legislative understanding or assumption that the "mortgagee" referred to also is

---

[17]General Laws c. 244, § 14, requires a mortgagee initiating foreclosure proceedings, inter alia, to publish notice of the foreclosure sale in a local newspaper and mail notice of the foreclosure sale to the owner of record within statutorily prescribed time periods.

the holder of the mortgage note. Thus, G. L. c. 244, § 17B, one of the foreclosure by sale sections closely related to § 14, deals with the notice required to be given as a condition to seeking a deficiency owed on a note after a foreclosure sale, and reads in part:

> "No action for a deficiency shall be brought . . . by *the holder of a mortgage note* or other obligation secured by mortgage of real estate after a foreclosure sale *by him* . . . unless a notice in writing of the *mortgagee's intention to foreclose* the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address *then known to the mortgagee*, together with a warning of liability for the deficiency, *in substantially the form* [set out in this section] . . ." (emphasis added).

By its terms, § 17B assumes that the holder of the mortgage note and the holder of the mortgage are one and the same; the section's drafters appear to have used the terms "holder of a mortgage note" and "mortgagee" interchangeably.[18] Moreover, the statutory form of the notice required by § 17B[19] bolsters our interpretation of § 17B; the statutory form language plainly

---

[18]A contrary reading of G. L. c. 244, § 17B, would lead to the absurd result of requiring the deficiency action be brought by the "holder of the mortgage note," while obligating the "mortgagee" to provide notice of the action to the mortgagor, with the result that a mortgagee's noncompliance with the statute could impair the note holder's right to collect a deficiency. We will not follow this interpretive path. See *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000) (court seeks to arrive at "sensible construction" of statute, and "shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results").

[19]The form of notice provided in G. L. c. 244, § 17B, reads in relevant part as follows:

*"Notice of Intention to Foreclose and of Deficiency After Foreclosure of Mortgage.*

*"To A.B.*                                    Street

> "You are hereby notified, in accordance with the statute, of my intention, on or after, to foreclose by sale under power of sale for breach of condition, *the mortgage held by me* on property on Street in . . . and recorded with deeds . . . *to secure a note (or other obligation) signed by you for the whole, or part, of which you may be liable*

envisions that the foreclosing mortgagee ("the mortgage held by me") and the note holder ("you may be liable to me in case of a deficiency") are one. And the same underlying assumption — that is, an identity between the mortgagee and the underlying note holder — also underlies several other sections in c. 244. See, e.g., G. L. c. 244, § 19 (providing that person entitled to redeem mortgage property "shall pay or tender to the mortgagee" amount due and payable "on the mortgage"); § 20 (requiring "mortgagee" who has been in possession of mortgage property to account for rents, profits, and expenses, and directing that any account balance be deducted from or added to amount "due on the mortgage"); § 23 (authorizing court to determine what amount not in dispute is "due on the mortgage," and to order it paid to "mortgagee").

"Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section.' " *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 747 (2011), quoting *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188 189 (1969). See *Booma* v. *Bigelow-Sanford Carpet Co.*, 330 Mass. 79, 82 (1953) ("It is a familiar canon of construction, that when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout"). Furthermore, we "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results." *Connors* v. *Annino*, 460 Mass. 790, 796 (2011), quoting *Canton* v. *Commissioner of the Mass. Highway Dep't*, 455 Mass. 783, 791 792 (2010). See *Adoption of Marlene*, 443 Mass. 494, 500 (2005), quoting *Ciardi* v. *F. Hoffmann La Roche, Ltd.*, 436 Mass. 53, 62 (2002) ("Statutes addressing the same subject matter clearly are to be construed harmoniously so as to give full effect to all of their provisions and give rise to a consistent body of law").

In accordance with these principles, and against the background of the common law as we have described it in the pre-

---

*to me* in case of a deficiency in the proceeds of the foreclosure sale [emphasis in text of notice added].

                    "Yours very truly,
                    "C.D. Holder of said mortgage."

ceding section, we construe the term "mortgagee" in G. L. c. 244, § 14, to mean a mortgagee who also holds the underlying mortgage note.[20,21] The use of the word "mortgagee" in § 14 has some ambiguity, but the interpretation we adopt is the one most consistent with the way the term has been used in related statutory provisions and decisional law, and, more fundamentally, the one that best reflects the essential nature and purpose of a mortgage as security for a debt.[22] See *Negron* v. *Gordon*, 373 Mass. at 204, and cases cited; *Maglione* v. *BancBoston Mtge. Corp.*, 29 Mass. App. Ct. at 90, and cases cited. See generally Restatement (Third) of Property (Mortgages) § 1.1 comment (1997) ("The function of a mortgage is to employ an interest in real estate as security for the performance

---

[20]As we discuss *infra*, principles of agency apply in this context and a mortgagee may act as the agent of the note holder.

[21]The defendants point to several Federal District Court and Bankruptcy Court decisions that rely on the language of G. L. c. 244, § 14, to support their position that a mortgagee not possessing the note can foreclose. See, e.g., *McKenna vs. Wells Fargo Bank, N.A.*, U.S. Dist Ct., Civil Action No. 10-10417-JLT (D. Mass. Mar. 21, 2011); *Valerio* v. *U.S. Bank, N.A.*, 716 F. Supp. 2d 124, 128 (D. Mass. 2010) (noting that G. L. c. 244, § 14, "is addressed to mortgagees, not note holders"). See also *Aliberti* v. *GMAC Mtge., LLC*, 779 F. Supp. 2d 242, 249 (D. Mass. 2011), citing *Valerio, supra.* See generally *Peterson vs. GMAC Mtge., LLC*, U.S. Dist. Ct., Civil Action No. 11-11115-RWZ (D. Mass. Oct. 25, 2011), citing *McKenna, supra,* and *Valerio, supra.* However, all of these cases effectively rely on a plain language analysis of the term "mortgagee" as contained in § 14, and do not analyze the term in the context of the broader statutory scheme or against the backdrop of the common law. Cf. *Culhane* v. *Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 367 (D. Mass. 2011) (in order to foreclose under Massachusetts law, mortgagee must "possess the legal title to the mortgage *and* either hold the note or establish that it is servicing the loan on behalf of the note holder" [emphasis in original]).

[22]The dictionary definition of "mortgagee" is consistent with the construction we give to the term. "[M]ortgagee" is defined as "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." Black's Law Dictionary 1104 (9th ed. 2009). This definition does not draw a clear distinction between a mortgagee and a note holder; in fact, it points the other way, suggesting that the mortgagee *is* the note holder (i.e., lender). As noted by the Supreme Court of Kansas, the legal dictionary definition reflects the fact that the law "generally understands that a mortgagee is not distinct from a lender." *Landmark Nat'l Bank* v. *Kesler*, 289 Kan. 528, 539 (2009). Accord *Mortgage Elec. Registration Sys., Inc.* v. *Saunders*, 2 A.3d 289, 295 (Me. 2010), quoting Black's Law Dictionary, *supra* ("The plain meaning and common understanding of mortgagee is '[o]ne to whom property is mortgaged,' " meaning mortgage creditor or lender).

of some obligation. . . . Unless it secures an obligation, a mortgage is a nullity").[23],[24]

---

[23]Although the defendants focus only on G. L. c. 244, § 14, we note that G. L. c. 183, § 21, providing for the statutory power of sale, reflects the same legislative understanding or assumption about the term "mortgagee" as we have found animates c. 244, § 14, namely, that the "mortgagee" holds both the mortgage and the mortgage note. The section of the 1912 statute that inserted the "statutory power of sale" into the General Laws (see note 16, *supra*), also enacted and inserted the "statutory condition," which currently appears as G. L. c. 183, § 20. See St. 1912, c. 502, § 6. In addition to the common source of these two sections, their language and structure demonstrate that they are meant to be read together. Section 20 of c. 183 describes the "statutory condition" as follows:

> "Provided, nevertheless, except as otherwise specifically stated in the mortgage, that *if the mortgagor*, or his heirs, executors, administrators, successors or assigns *shall pay unto the mortgagee* or his executors, administrators or assigns *the principal and interest secured by the mortgage*, and shall perform any obligation secured at the time provided in the note, mortgage or other instrument or any extension thereof, and shall perform the condition of any prior mortgage [and shall pay all appropriate taxes and insurance obligations] . . . and shall not commit or suffer any strip or waste of the mortgaged premises or any breach of any covenant contained in the mortgage or in any prior mortgage, *then the mortgage deed, as also the mortgage note or notes, shall be void*" (emphasis added).

The "statutory power of sale" set out in G. L. c. 183, § 21, picks up directly from where § 20 ends: "But upon any default in the performance or observance *of the foregoing or other condition*, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises" (emphasis added). Given the shared roots and integrated structure of G. L. c. 183, §§ 20 and 21, the presumption that the Legislature intends the same term to have the same meaning where it has used that term in different but related statutes, *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 747 (2011), seems compelling in relation to the term "mortgagee." And because § 20, by providing that the "mortgagee" is to be paid the principal and interest owed by the mortgagor, contemplated that the mortgagee is holding or entitled to enforce the mortgage note, it is only reasonable to interpret "mortgagee" in § 21 to have the same meaning.

[24]The defendants also cite *Ibanez*, 458 Mass. at 648, in support of their argument that a mortgagee having no connection with the mortgage note may foreclose. Their reliance is misplaced. In *Ibanez*, we addressed only the issue whether the plaintiff banks, or any party in a similar position, could validly foreclose on a mortgage through exercise of a power of sale if they did not hold the mortgage at the time they provided the statutorily prescribed notice of sale to the mortgagors and other interested parties. *Id.* at 649-651. We did not address the authority of a party possessing the mortgage alone, without the mortgage note, to foreclose. Nor did we do so in *Bevilacqua* v. *Rodriguez*, 460 Mass. 762, 776 n.10 (2011).

Contrary to the conclusion of the motion judge, however, we do not conclude that a foreclosing mortgagee must have physical possession of the mortgage note in order to effect a valid foreclosure. There is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales.[25] Accordingly, we interpret G. L. c. 244, §§ 11-17C (and particularly § 14), and G. L. c. 183, § 21, to permit one who, although not the note holder himself, acts as the authorized agent of the note holder, to stand "in the shoes" of the "mortgagee" as the term is used in these provisions.[26]

The defendants and several amici argue, to varying degrees, that an interpretation of "mortgagee" in the statutes governing mortgage foreclosures by sale that requires a mortgagee to hold the mortgage note will wreak havoc with the operation and integrity of the title recording and registration systems by calling into question the validity of any title that has a foreclosure sale in the title chain. This follows, they claim, because although a foreclosing mortgagee must record a foreclosure deed along with an affidavit evidencing compliance with G. L. c. 24, § 14, see G. L. c. 244, § 15; see also G. L. c. 183, § 4, there are no similar provisions for recording mortgage notes; and as a result, clear record title cannot be ascertained because the validity of any prior foreclosure sale is not ascertainable by examining documents of record.[27] They argue that if this court requires a

---

[25]An agency relationship arises "from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Harrison Conference Servs. of Mass., Inc.* v. *Commissioner of Revenue*, 394 Mass. 21, 24 (1985), quoting Restatement (Second) of Agency § 1(1) (1958).

[26]Eaton asserts also that the result we reach here is compelled by the Uniform Commercial Code (UCC), codified in Massachusetts at G. L. c. 106. She argues in substance that the note is a negotiable instrument, and that pursuant to art. 3 of the UCC, G. L. c. 106, §§ 3-301—3-312, only certain categories of persons are entitled to enforce negotiable instruments. Under her view, because Green Tree did not fall within any of the categories of persons entitled to enforce negotiable instruments, it was not entitled to enforce the note through foreclosure. We need not resolve Eaton's UCC argument. We perceive nothing in the UCC inconsistent with our view that in order to effect a valid foreclosure, a mortgagee must either hold the note or act on behalf of the note holder.

[27]In its amicus brief, REBA asserts that the contemporary secondary mortgage

mortgagee to have a connection to the underlying debt in order to effect a valid foreclosure, such a requirement should be given prospective effect.

In general, when we construe a statute, we do not engage in an analysis whether that interpretation is given retroactive or prospective effect; the interpretation we give the statute usually reflects the court's view of its meaning since the statute's enactment. See *McIntyre, petitioner*, 458 Mass. 257, 261 (2010), cert. denied, 131 S. Ct. 2909 (2011). However, there are several considerations that compel us to give the interpretation of "mortgagee" we announce here only prospective effect. As the previous discussion reflects, the use of the term "mortgagee" in the statutory scheme governing mortgage foreclosures was not free of ambiguity, and while the decisions of this court in years and centuries past provide support for the general proposition that, under our common law, a mortgage ultimately depends on

market exacerbates the title problem because, as we recognized in *Ibanez*, 458 Mass. at 649, the secondary market operates, permissibly, so that "underlying notes will be held by one entity for the benefit of the bond holders and the mortgages held by a servicer," and if the servicer conducts the foreclosure "there will be no evidence of record that will establish that the mortgagee was also the holder of the note at the time of the foreclosure." In effect, REBA argues, because "the essence of the MERS system is that MERS does not hold the underlying notes . . . and holds the mortgages only as nominee for the holder of the note," there will effectively be a presumption that the mortgagee did not hold the note at the time of the foreclosure.

We respond to REBA's concerns *infra*, but it is significant that MERS's current "Rules of Membership," version 3.12, most recently revised in March, 2012 (MERS rules), appear to recognize that there needs to be a connection made between the mortgage and the underlying debt as a condition precedent to an effective foreclosure by sale. See Rule 8(1)(a) of the MERS rules (requiring member owner of note or servicer initiating foreclosure on note secured by MERS mortgage first to effectuate assignment of mortgage "to the note owner's servicer, or to such other party expressly and specifically designated by the note owner"); Rule 8(1)(e)(i) of the MERS rules (obligating member note owner or servicer "to execute the assignment of the Security Instrument from [MERS] to the note owner's servicer, or to such other party expressly and specifically designated by the note-owner . . . and promptly send the assignment of the Security Instrument . . . for recording in the applicable public land records"); Rule 8(1)(d) of the MERS rules (revoking authority of MERS certifying officers to initiate foreclosure proceedings in MERS's name on or after July 22, 2011). Finally, as we just stated, we read the relevant mortgage foreclosure statutes to authorize a party who holds the mortgage directly and who serves as the agent of the note holder to qualify as the "mortgagee" entitled to foreclose under the power of sale.

connection with the underlying debt for its enforceability, none of our cases has considered directly the question whether a mortgagee must also hold the note or act on behalf of the note holder in order to effect a valid foreclosure by sale. It has been represented to us by the defendants and several amici that lawyers and others who certify or render opinions concerning real property titles have followed in good faith a different interpretation of the relevant statutes, viz., one that requires the mortgagee to hold only the mortgage, and not the note, in order to effect a valid foreclosure by sale. We have no reason to reject this representation of prior practice, and in that context, we recognize there may be significant difficulties in ascertaining the validity of a particular title if the interpretation of "mortgagee" that we adopt here is not limited to prospective operation, because of the fact that our recording system has never required mortgage notes to be recorded.

This court traditionally has given prospective effect to its decisions in very limited circumstances, but those have included circumstances where the ruling announces a change that affects property law. See *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 385 (2010); *Payton* v. *Abbott Labs*, 386 Mass. 540, 565 (1982). In the property law context, we generally apply our decisions prospectively out of "concern for litigants and others who have relied on existing precedents." *Id.* See *Powers* v. *Wilkinson*, 399 Mass. 650, 662 (1987). In addition, there may be particular reason to give a decision prospective effect where — as the argument is made here — "prior law is of questionable prognosticative value." *Blood* v. *Edgar's, Inc.*, 36 Mass. App. Ct. 402, 407 (1994). Where a decision is not grounded in constitutional principles, but instead announces "a new common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively." *Commonwealth* v. *Dagley*, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005). In the exceptional circumstances presented here, and for the reasons that we have discussed, we exercise our discretion to hold that the interpretation of the term "mortgagee"

in G. L. c. 244, § 14, and related statutory provisions that we adopt in this opinion is to apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion.[28]

   c. *Preliminary injunction.* Although we apply the rule articulated in this case prospectively, we nonetheless apply it to Green Tree's appeal because it has been argued to this court by Eaton. See *Bouchard* v. *DeGagne,* 368 Mass. 45, 48-49 (1975) (party seeking relief may be entitled to benefit from rule announced in case, even when other "somewhat similarly situated [parties] are not afforded the benefit of retroactive application of the principles established by that first appellate determination"). Cf. *Tucker* v. *Badoian,* 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring) (suggesting that when newly announced rule is given prospective effect, that rule may still apply to the case at bar if parties raised issue; declining to apply new rule, however, where parties appeared to accept that old rule would apply to them). See generally *Powers* v. *Wilkinson,* 399 Mass. at 663-665 (Abrams, J., concurring in part and dissenting in part) (discussing reasons in favor of applying new rule given general prospective application to particular litigants involved).

   The motion judge granted the preliminary injunction based on her determination that as a matter of still applicable common law, for a foreclosure by sale to be valid, the mortgage and the mortgage note must be unified physically in the possession of the foreclosing mortgagee. We have focused principally on the statutes governing mortgage foreclosure by sale and have concluded that where a mortgagee acts with the authority and on behalf of the note holder, the mortgagee may comply with these statutory requirements without physically possessing or actually holding the mortgage note. Eaton's verified complaint alleges that at the time of foreclosure in this case, Green Tree,

---

[28]It would appear that at least with respect to unregistered land, a foreclosing mortgage holder such as Green Tree may establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds pursuant to G. L. c. 183, § 5B. The statute allows for the filing of an affidavit that is "relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title." Such an affidavit may state that the mortgagee either held the note or acted on behalf of the note holder at the time of the foreclosure sale. See G. L. c. 183, § 54B.

as assignee of MERS, was neither in possession of Eaton's mortgage note nor "authorized by the holder of the note to carry out the foreclosure." However, Eaton makes this allegation solely on "information and belief." As a general rule, an allegation that is supported on "information and belief" does not supply an adequate factual basis for the granting of a preliminary injunction. See *Alexander & Alexander, Inc.* v. *Danahy*, 21 Mass. App. Ct. 488, 493-494 (1986), and cases cited (noting that although preliminary injunction may be based on affidavits and verified complaint, allegations based only on information and belief would be insufficient to support preliminary injunction). See also M.G. Perlin & S.H. Blum, Procedural Forms Annotated § 106:1 (6th ed. 2009).

The motion judge's decision on the preliminary injunction does not consider the question of Green Tree's (or MERS's) authority to act on behalf of BankUnited or an assignee of Bank-United in initiating foreclosure proceedings, and our examination of the Superior Court record suggests that this issue was not raised below. In the circumstances, we conclude that Eaton's allegation on information and belief that Green Tree was not authorized by the note holder to carry out the foreclosure sale did not offer an adequate factual basis to support the preliminary injunction that was issued. Consequently, the order granting the preliminary injunction must be vacated. On remand, Eaton may renew her request for a preliminary injunction, and in that context seek to show that she has a reasonable likelihood of establishing that, at the time of the foreclosure sale, Green Tree neither held the note nor acted on behalf of the note holder.[29]

4. *Conclusion.* We vacate the grant of the preliminary injunction, and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[29]As noted at the outset of this opinion, the mortgage identifies MERS as mortgagee, but one that acts as the "nominee" of the lender. It is not clear what "nominee" means in this context, but the use of the word may have some bearing on the agency question. We express no opinion whether MERS or Green Tree was acting as agent of the note holder or with the note holder's authority at the time of the foreclosure sale. Eaton is entitled to pursue discovery on this issue in connection with her Superior Court action.