Locke, Jeffrey A., J.
On August 6, 2012, the plaintiff, Akibia, Inc., filed this action for preliminary and permanent injunctive relief and damages against the defendants, Jeffery Hood, Ryan Gavigan, and Charles Krueger, former employees of Akibia. Akibia is seeking to enforce an employee invention, non-disclosure, and non-solicitation agreement that it had with each defendant. The defendants are currently employed by IOvations, which according to Akibia, is a competitor.
Akibia has filed a motion for a preliminary injunction. The defendants have each filed separate written oppositions and affidavits. The parties have also filed reply memoranda. On August 14, 2012, this Court held a hearing on Akibia’s motion. For the following reasons, Akibia’s motion for a preliminary injunction is DENIED.
BACKGROUND
The facts as revealed by the pleadings and the materials submitted by the parties are as follows. Akibia is an information technology company based in Westborough, Massachusetts that provides infrastructure management solutions to its customers. Akibia partners with original equipment manufacturers (OEM) and provides independent advice to its customers on how they can optimize, secure, and manage their information technology infrastructures. Akibia markets its products and services in several different categories, including Network and Security Services (NSS) and Data Center Services (DCS). In 2002, Akibia acquired all of the assets of the networking and security hardware and software business of Interliant, Inc. After this acquisition, Akibia began marketing NSS offerings to its customers.
The defendants are former employees of Akibia. They held senior sales positions when they left the company. The plaintiff has attached employee invention, non-disclosure, and non-solicitation agreements to its complaint that each defendant signed in connection with his employment at Akibia. Hood signed and dated the agreement on August 21, 2002; Gavigan signed and dated his agreement on August 21, 2002; and Krueger signed and dated his agreement on July 17, 2006. Each agreement provides in part that:
3. I agree that during the term of this Agreement, and for a period of one (1) year thereafter, I will not directly or indirectly, alone or in association with any other person, corporation, firm or business, solicit from any customer or prospective customer of Akibia any business competitive to Akibia. In addition, I shall not seek subsequent employment from, act as a consultant or advisor to, nor create any entity in competition with Akibia. The above notwithstanding, should my employment with Aki-bia cease pursuant [to] a reduction in force, the non-competition provision hereof shall be null and void. Should any term of this non-solicitation/non-competition clause be determined by a competent court to be unenforceable due to the scope hereof, then the parties agree that it is their desire that said court be empowered to reform this clause such that it is enforceable under the circumstances.
[[Image here]]
5. During my employment and for a period of one year thereafter, I shall not hire or employ, directly or indirectly through any enterprise with which I am associated, any employee or consultant of Aki-bia, or recruit, solicit or induce (or in any way assist another person or enterprise in recruiting, soliciting or inducing) any employee or consultant of Akibia to terminate his or her employment or other relationship with Akibia.
6.1 agree to disclose the existence and terms of this Agreement to any prospective employer, partner or co-venturer prior to entering into any employment, partnership or other business relationship with such person or entity.
7. I acknowledge and agree that any breach by me of the provisions of Section 2, 3 or 4 of this Agreement will result in irreparable injury to Akibia and that a remedy at law, alone, will be an inadequate remedy for such breach and that, in addition to any other remedy Akibia may have, Akibia will be entitled to enforce the specific performance of this Agreement by me and to seek both temporary and permanent injunctive relief without the necessity of proving actual damages.
8.(a) I agree that if any portion or provision of this Agreement shall, to any extent, be declared illegal or unenforceable by a court of competent jurisdiction, then the court may amend such portion or provision so as to comply with the law in a manner consistent with the intention of this Agreement, and each portion and provision of this Agreement will be valid and enforceable to the fullest extent permitted by the law.
(b) I further understand and agree that my obligation under this Agreement will continue after my employment ends, regardless of reason, and will continue regardless of any changes in my title, position, duties, compensation or other terms and conditions of employment.
[[Image here]]
10. This Agreement shall be deemed to be made and entered into in the Commonwealth of Massachusetts, and shall in all respects be interpreted, enforced and governed under the laws of the Commonwealth without regard to its conflict of laws *491 provision. The parties hereto voluntarily submit themselves to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts with respect to any action to remedy any breach or to otherwise enforce the terms and conditions of this Agreement.
Hood’s Affidavit
Hood has attached a nine-page affidavit dated August 11,2012 to his written opposition. In his affidavit, Hood describes his former employment relationship with Akibia. Hood has specialized in the sale of NSS products throughout his entire professional career, 1992 to 2012. From 1999 to 2002, he worked for Interliant in NSS sales. In 2002, Akibia purchased Interliant, and according to Hood, his superiors required him to sign an employee invention, non-disclosure, and non-solicitation agreement. Akibia did not give Hood an increase in compensation in exchange for signing the agreement. From August of 2002 to March of 2006, Hood worked for Akibia as a sales representative. He worked directly with clients and sold NSS offerings.
In April of 2006, he was promoted to the position of sales team leader, and as a result of this promotion, Hood was responsible for managing seven sales representatives. Akibia also changed Hood’s sales targets in that he would be responsible for securing “renewal” business and “new” business in addition to his personal goal. Prior to the promotion, Hood was only responsible for his personal goal. Moreover, Hood’s compensation structure changed as a result of the promotion. He received additional income of approximately $62,000 from team incentive compensation commissions. Hood did not sign a new non-compete agreement following the promotion.
In August of 2006, Hood was promoted to regional sales manager. As a result of this change, he no longer worked directly with clients, but he was required to meet and coach sales teams throughout New England, establish relationships, plan more directly with Akibia’s partners, and travel to industry events to represent Akibia. Hood also became responsible for conducting business and personnel reviews, hiring and firing sales staff, coordinating training, and developing business strategies. Hood’s compensation plan changed, and Akibia increased his sales target goals.
In April of 2008, Hood’s employment position changed when he was promoted to manager of Americas east sales. As a result of this change, he managed two team leaders and their teams. Hood’s compensation structure increased as a result of this promotion.
In November of 2009, Hood’s employment position changed when he was effectively demoted to a regional sales manager. Hood’s role was reduced to only cover the New England area, and he only managed individual sales representatives.
In December of 2010, Hood’s employment and position changed when Akibia was acquired by an Indian corporation, Zensar. As a result of the acquisition, Akibia changed its product offerings and began to encourage the sale of Zensar products along with Akibia’s existing products and services. Hood believes that Akibia gradually withdrew resources from supporting the sale of NSS services. Hood never signed a non-compete agreement with Zensar.
In April of 2012, Hood’s employment position changed again when he was deemed a regional sales director. His compensation plan was changed. After each change in his employment position, Hood never signed a new non-compete agreement.
According to Hood, when Akibia sells an NSS offering to a client, it acts as a value added reseller of different NSS products. These products are produced by different OEMs, not by Akibia. Thus, Akibia’s sales teams work closely with OEM sales teams when selling an NSS product. OEMs and Akibia jointly identify and sell to target clients, j ointly host marketing events, and jointly manage accounts. Additionally, while Hood acknowledges that there is a small overlap between the offerings of Akibia and IOvations, he does not believe that IOvations is a competitor of Akibia “in any respect.” Hood denies recruiting Krueger or Gavigan to join IOvations and denies misleading Akibia about his future employer when he left Akibia in June of 2012.
Gavigan’s Affidavit
Gavigan has attached a thirteen-page affidavit dated August 11, 2012 to his written opposition. Gavigan began working for Interliant in August of 2000 as an inside sales support person. He quoted software and hardware products for customers, specifically NSS products, and earned about $50,000 per year.
After Akibia purchased Interliant in August of2002, Scott Moody, his superior, told him that to work at Akibia, he would be required to sign an employee invention, non-disclosure and non-solicitation agreement. At the time, Gavigan was earning about $60,000, and he signed the agreement, but Akibia did not give him a pay increase or compensation in exchange for signing the agreement.
In 2004 or 2005, Gavigan became an associate sales representative at Akibia. Gavigan would set up new appointments for account managers and would make cold calls in an attempt to secure new customers. He earned a base salary and a quarterly bonus. He did not sign a new non-compete agreement after this change in his position.
Akibia promoted Gavigan to junior account manager in April of 2006. Akibia assigned him to territory in Rhode Island and Connecticut where Akibia had little business. He was responsible for building up business in those states with the focus of selling NSS *492 products. Gavigan’s compensation increased as a result of this promotion.
In 2008, Akibia took away Gavigan’s Rhode Island territoiy and assigned the territory to others. It also announced that it was merging DCS sales teams with NSS sales teams. Gavigan began selling DCS contracts as well.
Akibia promoted Gavigan to senior account manager in 2011 and was assigned to the entire state of Connecticut. He earned a larger base salary, but his commissions and bonuses remained the same.
According to Gavigan, in June of 2012, Akibia significantly changed his sales commission plan and sales quotas for fiscal year 2013. His commissions were reduced, and Akibia eliminated bonuses for NSS products. Also, Akibia increased Gavigan’s sales quotas for fiscal year 2013. Gavigan estimated that under the new plan, he would lose approximately $87,000, or forty percent of potential commissions compared to fiscal year 2012. Gavigan never signed a new non-compete agreement after he signed the 2002 agreement.
Gavigan believes that Zensar’s acquisition of Akibia changed the direction of his former company. Zensar directed Akibia to focus on infrastructure management, a subject that Gavigan knew little about. Gavigan felt as if he had no choice but to leave Akibia for IOvations, a company that he does not think is a direct competitor of Akibia in NSS, DCS, or infrastructure management offerings.
On June 13, 2012, Gavigan notified Akibia that he was resigning from his position at Akibia. Later that day, Akibia prohibited Gavigan from accessing his computer. On June 18, 2012, he started working at IOvations. Gavigan stated in his affidavit that after he left Akibia, he introduced all of his customer contacts to Bob Reilly of Akibia, who would be taking over his territory for Akibia.
Krueger’s Affidavit
Krueger has attached an eleven-page affidavit dated August 11, 2012 to his written opposition. Krueger worked as a senior sales representative for Akibia from 2006 to 2012.[2] He reported to Hood and was primarily responsible for selling NSS solutions. In 2006, he had an assigned territoiy that included New Hampshire, Vermont, and portions of Massachusetts. In 2008, Akibia took away this territoiy from Krueger. He was left with forty named accounts and some existing and prospective targets.
In 2010, Zensar acquired Akibia. Akibia changed its product offerings as a result of this acquisition, and Krueger asserts that selling Zensar products constituted a “dramatic shift” in his role at Akibia because Zensar’s services required an entirely different sales approach. In June of 2012, Akibia presented Krueger with a compensation plan and sales quotas for fiscal year 2013. Under the plan, bonuses for NSS products were eliminated, his estimated total compensation would decrease by $100,000, and his sales quotas were increased. The changes in the compensation plan indicated that Akibia wanted Krueger to focus on infrastructure management services, an area he knew little about. Krueger opined that over time, Akibia began withdrawing resources for NSS offerings in response to its increased focus on offering Zensar’s products. Akibia did not ask him to sign a new non-compete agreement after these changes. Krueger left Akibia in the summer of 2012 to work for IOvations.
Akibia Learns that the Defendants are Employed by IOvations
As noted above, by the end of June of 2012, each of the defendants had left their employment with Akibia. The defendants now work for IOvations, a direct competitor to Akibia.[3] As a matter of routine, when an employee leaves Akibia, the former employee’s supervisor monitors the former employee’s Akibia e-mail account so that any business issues can be addressed. Philip Harris, vice-president of global sales and marketing for Akibia and Hood’s supervisor, monitored Hood’s e-mail account. On July 31, 2012, Hood’s Akibia e-mail account received an e-mail from Joe LaBrecque, an employee of Check Point Software Technologies. Check Point is one of Akibia’s OEM partners. Akibia attached a copy of this e-mail to its complaint. LaBrecque intended to send this e-mail to Hood at his IOvations e-mail address, jhood@iovations.com, but he apparently sent it to Hood’s Akibia e-mail address instead.[4] Akibia notes in its complaint that LaBrecque worked with Hood while Hood worked at Akibia. As well, the misdirected e-mail chain includes messages to Gavigan and Krueger at their new IOvations email addresses.
Before discovering the misdirected e-mail in Hood’s Akibia e-mail account, Akibia learned from Bobby Morganti, field marketing manager at Check Point, that Check Point would significantly reduce the amount of funding that it would provide for a harbor cruise event with Akibia.[5] Morganti was included as a recipient in the misdirected e-mail chain that Akibia found in Hood’s Akibia e-mail account. Akibia believes that the defendants influenced Check Point to limit its funding for the Akibia harbor cruise in favor of sponsoring marketing events with IOvations, their new employer.
Harris’s Supplemental Affidavit
Harris filed a supplemental affidavit dated August 14,2012.[6]Harris disagrees with the defendants’ claim in their affidavits that their positions, duties, or other terms of their employment changed materially while they were employed at Akibia. According to Harris, each year, Akibia provided each defendant with a sales compensation plan that set target sales and commissions. The plans changed each year to reflect Akibia’s “strategic plan, economic conditions and other business factors.” Harris maintained that the defendants’ *493 job responsibilities, to sell products and services offered by Akibia, have remained consistent. Harris noted that each defendant was able to consistently meet his sales quota. He also reported that each defendant’s total compensation over the past five years has generally increased.
Akibia Files Complaint in Superior Court
On August 6, 2012, Akibia filed a six-count complaint in the Superior Court alleging: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); interference with advantageous or contractual relations (Count III); common-law misappropriation of confidential and proprietary information (Count IV); misappropriation of trade secrets in violation of G.L.c. 93, §42 (Count V); and breach of fiduciary duly (Count VI). As well, Akibia moves for a preliminary injunction as follows:
1. Enjoining each Defendant, for a period of twelve (12) months from the date of entry of the injunction, from: (i) directly or indirectly, alone or in association with any other person, corporation, firm or business, soliciting from any customer or prospective customer of Akibia any business competitive to Akibia; (ii) seeking subsequent employment from, or acting as a consultant or advisor to, or creating, any entity in competition with Akibia; (iii) continuing employment with, or acting as a consultant or advisor to, any entity in competition with Akibia, including IOvations; or (iv) hiring or employing, directly or indirectly through any enterprise with which a Defendant is associated, any employee or consultant of Akibia, or recruiting, soliciting or inducing (or in any way assisting another person or enterprise in recruiting, soliciting or inducing) any employee or consultant of Akibia to terminate his or her employment or other relationship with Aki-bia.
2 Enjoining each Defendant from directly or indirectly, at any time, divulging, furnishing, making available, or using any Confidential Information obtained from Akibia (as that term is defined in the Agreement) without the written consent of Akibia.
3. Requiring Defendants to immediately return to Akibia all confidential and propriety documents and information of any kind (whether in hard copy or electronic form and whether originals or copies) furnished to them by Akibia, or obtained or prepared by them while employed by Akibia, including all books, records, documents, customer lists, and customer or prospect contact information.
4. Requiring Defendants to retain within this jurisdiction, and to not destroy or alter, all documents concerning their contacts and communications with Akibia’s customers and prospective customers; all documents and data removed by Defendants from Akibia; and all other documents and data referenced in or relevant to this Complaint.
On August 9, 2012, this Court issued a temporary restraining order, enjoining each defendant from working for IOvations or for any business that competes with Akibia.
DISCUSSION
When evaluating a motion for a preliminary injunction, this Court is required to perform a three-part balancing test. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980); Eaton v. Federal Nat. Mortg. Ass’n, 462 Mass. 569, 574 (2012). First, the court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. Packaging Indus. Group, Inc. v. Cheney, 380 Mass, at 617. Second, the court must determine whether the failure to issue a preliminary injunction would subject the moving party to irreparable injury. Id. In the context of a motion for a preliminary injunction, irreparable injuries are losses that cannot be adequately compensated by a final judgment. Id. at 617 n.ll. Third, “[i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing parly. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. at 617. A preliminary injunction is a significant remedy that should not be granted unless the plaintiff has made a clear showing of entitlement thereto. Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004).
“Employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer... Such legitimate business interests might include trade secrets, other confidential information, or ... the good will the employer has acquired through dealings with his customers . . . Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced.” Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287 (1974). See Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 647 (1976) (discussing criteria court should consider in determining whether to enforce a covenant restricting competition).
Yet, under Massachusetts law, a non-solicitation agreement or covenant not to compete may be deemed void if there are material changes in the employment relationship between the employee and his or her employer. See, e.g., Iron Mountain Information Mgmt., Inc. v. Taddeo, 455 F.Sup.2d 124, 132 (E.D.N.Y. 2006); *494 AFC Cablesystems, Inc. v. Clisham, 62 F.Sup.2d 167, 172-73 (D.Mass. 1999); Grace Hunt IT Solutions, LLC v. SIS Software, LLC, 29 Mass. L. Rptr. 460 (Mass.Super.Ct. Feb. 14, 2012) (Lauriat, J.); Lycos, Inc. v. Jackson, 18 Mass. L. Rptr. 256 (Mass.Super.Ct. Aug. 25, 2004) (Houston, J.). Far reaching changes in an employment relationship, such as changes in rate of compensation or sales area, suggest that the parties have abandoned their old arrangement and entered into a new employment relationship. F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 587 (1968). Thus, each time an employee’s employment relationship with his or her employer changes materially such that the parties have entered into a new employment relationship, the parties must execute a new non-solicitation agreement or covenant not to compete. Iron Mountain Information Mgmt., Inc. v. Taddeo, 455 F.Sup.2d at 132-33 (citation omitted).
In the instant case, Akibia’s motion for a preliminary injunction must be denied because this Court is not satisfied that Akibia has demonstrated a likelihood of success on the merits.[7] Based on the current record before this Court, there is significant evidence, by way of sworn affidavits from the parties, to suggest that there were material changes in the employment relationships between the defendants and Akibia over their multi-year course of employment with the company. Accordingly, these material changes in the employment relationships between the parties probably voided the original employee invention, non-disclosure, and non-solicitation agreements that Akibia required the defendants to execute. See Iron Mountain Information Mgmt, Inc. v. Taddeo, 455 F.Sup.2d at 132; F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass, at 587.
As discussed more specifically above, beginning years ago, each defendant saw fundamental changes in his position title, amount of compensation, sales quota, sales territory, and job responsibilities during his time at Akibia. For instance, Hood began working at Akibia after it purchased Interliant in 2002. From August of 2002 to March of 2006, Hood worked for Akibia as a sales representative and worked directly with clients. He was later promoted to regional sales manager and was required to meet and coach sales teams throughout New England. By April of 2008, Akibia promoted Hood to manager of Americas east sales. In April of 2012, Hood’s employment position changed again when he was deemed a regional sales director. After each change in his employment position, Hood received an increase in his compensation and changes in his responsibilities, but he never signed a new employee invention, non-disclosure, and non-solicitation agreement with Akibia. As examined above, this same pattern of promotion, changes in responsibilities or sales territory, and increases in compensation holds true for Gavigan and Krueger as well. At no time did Gavigan or Krueger ever execute a new employeeinvention,non-disclosure,andnon-solicitation agreement with Akibia. Furthermore, after Zensar, an Indian corporation, acquired Akibia in December of 2010, none of the defendants executed a new employee invention, non-disclosure, and non-solicitation agreement despite the company’s change in product sales strategy and offerings. Based on the defendants’ affidavits, this Court concludes that Akibia gradually shifted its focus, at the direction of Zensar, from NSS offerings to infrastructure management services.[8] Therefore, Zensar’s acquisition of Akibia provides further evidence of significant and material changes in the employment relationship between Akibia and each of the defendants. The original employee invention, non-disclosure, and non-solicitation agreements that Akibia required the defendants to execute are likely no longer in effect. Consequently, Akibia’s motion for a preliminary injunction is denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that Plaintiff Akibia, Inc.’s Motion for a Preliminary Injunction is DENIED. The Temporary Retraining Order previously entered on August 9, 2012 as to Defendants, Jeffery Hood, Ryan Gavigan, and Charles Krueger, is VACATED.

Akibia originally hired Krueger as a territory account manager in 2006.

IOvations works with many of the same OEM partners as Akibia in the NSS space. IOvaüons offers the NSS products that these OEM partners market. IOvaüons markets enterprise security audits, security assessments, and security compliance solutions, services that Akibia offers as well.

Nhe misdirected e-mail indicates that Hood is now general manager of network and security at IOvaüons.

The harbor cruise is a significant marketing event for Akibia and is designed to bring together OEM partners, customers, prospective customers, and Akibia’s sales and professional team. Akibia devotes extensive resources to this event.

Akibia previously filed an affidavit of Harris dated August 6, 2012 in support of its motion for a preliminary injunction.

Given this Court’s conclusion that Akibia has not demonstrated a likelihood of success on the merits, this Court need not address whether Akibia would be subject to irreparable harm.

Gavigan and Krueger noted in their affidavits that Akibia eliminated monetary bonuses for NSS products, products they specialized in, for fiscal year 2013.